425 P.2d 432

John M. FAVOUR and Betty O. Favour, his wife, Keith F. Quail and Mary Ellen Quail, his wife, Jack Fletcher and Jane Doe Fletcher, his wife, Appellants,

v.

Joan Castle JOSEFF, Appellee.

John M. FAVOUR and Betty O. Favour, his wife, and Keith F. Quail and Mary Ellen Quail, his wife, Appellants,

v.

Joan Castle JOSEFF, a single woman, John P. Rubel and Margaret Ann Rubel, his wife, and James G. Savoini and Marilyn Savoini, his wife, Appellees.

Nos. I CA–CIV 309, I CA–CIV 349.

Court of Appeals of Arizona.

March 29, 1967.

Rehearing Denied May 1, 1967.

Review Denied June 6, 1967.

———◆———

Snell & Wilmer, by Mark Wilmer, Phoenix, for appellants.

Kramer, Roche, Burch, Streich & Cracchiolo, by Frank Haze Burch and Daniel Cracchiolo, Phoenix, for appellees.

DONOFRIO, Acting Chief Judge.

This is a consolidated appeal of two separate actions involving substantially the same parties, turning upon a single question which is determinative of both cases. For convenience, both cases will be treated together.

The appeals are from summary judgments, one in favor of the appellee as defendant, entered by the Superior Court of Yavapai County in an action for specific performance on a right of first refusal to

buy a ranch, which right was part of an alleged lease, and also from a summary judgment entered by the same court in favor of the appellee as plaintiff in an action for forcible detainer.

Appellee is the owner of a ranch near Prescott, Arizona, and had granted five-year leases of the ranch for a number of years. In leases of 1949 and 1954 one of the appellants was one of the lessees and had engaged in some negotiations with the appellee. The 1949 lease began April 1, 1949, but was not signed until after the beginning of the lease term. The 1954 lease began April 1, 1954, but was not signed until after the lease term began. After the 1954 term ended appellee leased the ranch to the appellants for a five-year term beginning April 1, 1959, and ending March 31, 1964, at a rent of $6000 for the five-year term. Installments of $1200 each year were payable in advance. The term of the 1959 lease began before it was formally executed on July 15, 1959. In paragraph 8 of the lease, appellee as lessor, agreed not to accept an offer for sale from another party without first affording the lessees the right to acquire the ranch on the same terms and conditions. By letter dated March 22, 1963, appellants transmitted the last annual installment on the 1959 lease and informed appellee that they would like to renew the lease for five years at the same terms. January 24, 1964, appellants wrote the appellee enclosing a check for $1200, and a new lease to begin April 1, 1964, at the same terms. The text of the letter was as follows:

"Please find enclosed herewith our firm check in the sum of $1,200.00, in payment of the annual rental installment on the ranch, which will become due April 1, 1964.

"We notice that the term of the existing Lease will expire at the end of March, 1964, and have, therefore, enclosed herewith a new Lease, for an additional five year period, containing the same terms that were incorporated in the former Lease.

"If this new Lease meets with your approval, will you please execute the original and return it to this office in the enclosed self-addressed and stamped envelope."

The appellee endorsed the check and around February 7, 1964, deposited it in her account. The check was paid by the drawee bank. Thereafter appellants granted a written sublease on the residence at the ranch for a year, beginning February 21, 1964, and the subtenant took possession. The end of the old term and the beginning of the new term came and passed without further contact between the appellants and appellee. A sublease for grazing was granted by appellants. Then in late May, 1964, appellants came to understand that appellee had contracted to sell the ranch. A letter dated May 28, 1964, was sent to the appellee in California informing her of their belief that the new lease had been effected; that they had granted a sublease; that they had a right of first refusal; and of the rumor they had heard of the sale of the property. No answer was received.

A June 6, 1964, letter of appellants noted appellee's lack of response, and stated they had been informed that appellee had received acceptable offers from a Mr. Rubel and a Mr. Savoini. Appellants requested the terms of the offer so they could contract with appellee on the same conditions. Again appellants reiterated their stand that the five-year lease had been effected. They stated that in January of 1964 appellee had advised a Prescott attorney in writing that she was agreeable to a new lease. A telegram was sent by appellants stating that terms tendered in other offers were acceptable to appellants. Appellants also stated that their California attorney was in contact with appellee's California attorney. Appellee made no response. June 29, 1964, appellee's California attorney mailed a letter claiming mistake in the endorsement and deposit of the check for $1200. $400 was deducted to cover the occupancy for the months of April, May, June and July, 1964, and appellee's $800 check for the balance was enclosed. Appellee's alleged statement

to the Arizona attorney in January of 1964 was characterized as preliminary negotiation. This attorney expressed a position that there was no lease.

Appellants rejected and returned the $800 check to appellee, who has retained the entire $1200 without tendering it into court.

A notice to terminate tenancy dated September 17, 1964, was sent by appellee's California attorney to appellants, ordering appellants to vacate the premises of the ranch at 12 p. m., March 31, 1965. The contracts between the appellee and Rubel and Savoini were rescinded. The action for specific performance was filed March 9, 1965. April 6, 1965, appellee made another written demand that appellants surrender possession, and on May 11, 1965, she filed an action in forcible detainer. Appellee's motion for summary judgment on forcible detainer was granted and judgment was entered August 30, 1965. Judgment was stayed pending the result of the specific performance action on appeal. December 9, 1965, judgment was entered for appellee in the specific performance action. These appeals followed and were consolidated.

■ The granting of a motion for summary judgment is proper only when there are no issues of material fact. Lawless v. Ennis, 3 Ariz.App. 451, 415 P.2d 465 (1966).

■ This Court has been presented with the same record, including exhibits and two depositions which the trial court considered prior to granting the motions for summary judgment. The record in behalf of each of the parties in these actions gives rise to questions as to appellee's intention and knowledge. As Division Two of the Court of Appeals has stated in Reidy v. Almich, 4 Ariz.App. 144, 418 P.2d 390 (1966):

"*  *  * In each of the cases cited, to the extent that the case was concerned with the factual issue of a state of mind, the state of mind at issue pertained to a party to the suit. In each, there was some semblance of circumstantial evidence that this party's claim or disclaim-er of the state of mind in question was untrue. The reasoning of these cases is that under these circumstances the matter should not go off on summary judgment, but a jury, or the trier of fact, should be given the opportunity to judge the credibility of the testimony of such a party by direct confrontation at the time of trial."

The questions of intent and knowledge are questions of a state of mind and the state of mind which must be determined is that of a party.

These questions are questions of fact, however they may not be the only questions of fact. It is not our desire, by making the above statement, to in any way inhibit the trial court in its further action on remand of this case.

Reversed and remanded.

STEVENS, J., and KENNETH C. CHATWIN, Superior Court Judge, concur.

Note: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, Judge KENNETH C. CHATWIN was called to sit in his stead and participate in the determination of this decision.