494 P.2d 370

**John M. FAVOUR et al., Appellants,**

v.

**Joan Castle JOSEFF, a single woman, et al., Appellees.**

**No. I CA–CIV 1537.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 2, 1972.

Rehearing Denied April 5, 1972.

Review Denied May 31, 1972.

Snell & Wilmer by Mark Wilmer, Phoenix, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellees.

STEVENS, Presiding Judge.

The appellants were the tenants under a written lease for the period of 1 April 1959 to 31 March 1964. The lease did not contain an option to renew the same. The lease contained a first right of re-

fusal in the event that the landlord secured an offer to purchase under terms satisfactory to the landlord. In January 1964 the tenants prepared a new lease with the terms identical to the terms of the 1959–1964 lease except that the new term of the lease was to be 1 April 1964 to 31 March 1969. The tenants signed and acknowledged the new lease. The new lease, a check for the first year's rent and a letter were enclosed in a single envelope bearing the return address of the tenants. These documents were mailed to and received by the landlord. The landlord promptly personally endorsed the check which was deposited and charged against the bank account of the tenants. The landlord did not sign the new lease, she did not return it to the tenants, nor did she otherwise communicate with the tenants. On or after 1 April 1964 she commenced negotiations for the sale of the property to persons other than the tenants and agreements of sale were executed. The tenants at all times have been ready, able and willing to buy under the identical terms and conditions set forth in the agreements of sale and they have not been granted the privilege of first refusal. Thereafter the landlord retained a portion of the money which she had received when she cashed the aforementioned check and tendered the return of the remainder thereof, which tender was refused by the tenants.

The basic question for this Court is whether, under these circumstances, the endorsing and cashing of the check together with a retention of a portion of the proceeds constituted a " * * * memorandum * * * in writing and signed by the party to be charged * * * ", that is, by the landlord, so as to avoid the statute of frauds which is A.R.S. § 44–101, and thereby enable the tenants to demand their right of first refusal.

Among other relief sought by the tenants in the action filed in the Superior Court is the right of specific performance. The question of the availability of this form of relief is also before us.

Initially the trial court ruled against the tenants by summary judgment. This ruling was reversed by this Court by its decision in Favour v. Joseff, 5 Ariz.App. 244, 425 P.2d 432 (1967). Thereafter the case was tried and a judgment adverse to the tenants was entered. This appeal then followed.

## THE PARTIES

The appellants were the tenants and were the plaintiffs in the trial court. They will be referred to herein by name or as the tenants. The appellee, Joan Castle Joseff, is the landowner and was the lessor. She was a defendant in the trial court and will be referred to herein as Mrs. Joseff. The remaining appellees are the persons with whom Mrs. Joseff contracted to sell the land and they were defendants in the trial court. They will be referred to herein by name.

## BACKGROUND

This case was tried before an advisory jury. The jury answered four interrogatories, two with reference to Mrs. Joseff and two with reference to the buyers. The interrogatories with reference to Mrs. Joseff will be set forth later in this opinion. The trial court did not expressly approve or disapprove any of the answers to the interrogatories in ruling upon the post-trial motions. In relation to the post-trial motions, the trial court ruled as follows:

"The evidence herein, both oral and documentary, is insufficient to overcome the Statute of Frauds defense, and also is insufficient to warrant the remedy of specific performance. Therefore, it is Ordered denying the relief prayed for by plaintiff, and awarding defendants judgment and costs."

Our earlier opinion sets forth certain background and we deem it appropriate to enlarge thereon.

Mrs. Joseff was a resident of California. All of the other parties were residents of Yavapai County, Arizona, in which county the land in question is situated.

Mrs. Joseff and her husband were engaged in business in California. They purchased the land in question, The American Ranch (hereinafter referred to as the ranch), in 1943. Mr. Joseff died in 1948 and Mrs. Joseff carried on the business in California as well as retaining the ownership of the ranch. For a time the title was vested in a corporation. In this opinion we do not distinguish between the periods of corporate ownership and Mrs. Joseff's individual ownership. Mrs. Joseff's business interests were substantial, required the employment of a number of persons and included contracts with the United States government. There were a number of California properties wherein she was the landlord.

The ranch was leased for three 5-year periods, the last lease formally executed by the tenants and by Mrs. Joseff carried the expiration date of 31 March 1964. Quail, one of the plaintiffs, was one of the tenants in each of these leases and he is the only person who was a tenant in all three leases. Each lease commenced on the 1st day of April and terminated five years later on the 31st day of March. We will refer to the leases as the 1949–1954 lease, the 1954–1959 lease and the 1959–1964 lease.

The 1949–1954 lease was signed and acknowledged by Mrs. Joseff on 15 June 1949. The annual rental was $1,000 which was payable *at the end* of each annual lease period.

The 1954–1959 lease was signed and acknowledged by the tenants on 30 March 1954. Mrs. Joseff signed and her signature was acknowledged on 30 June 1954. The only change was that the rent was payable *annually in advance*.

The 1959–1964 lease was signed and acknowledged by the tenants on 2 July 1959 and by Mrs. Joseff on 15 July 1959. The annual rental was changed to the figure of $1,200 payable annually in advance. The first refusal clause in question was added.[1] During the period before the 1959–1964 lease was prepared and executed and on or about 1 June 1959, Mrs. Joseff wrote to one of her former tenants suggesting that due to the increase in taxes the rent should be increased by $150 or $200.

Mrs. Joseff testified that she personally received the rent from each of her several leases and that the ranch was the only Arizona land subject to these leases. When she received the tendered lease for 1964–1969, the check which she endorsed and the letter, she testified that she knew from the return address on the envelope that the correspondence related to the ranch.

The rent for the first year of the 1959–1964 lease was paid at the time the tenants executed the lease. Thereafter the annual rent was paid prior to the due date and each payment was accompanied by a short letter of transmittal. By letter dated 22 March 1963 the rent for the last year of the 1959–1964 lease was transmitted to

1. "If at any time during the existence of this Lease or any extension or renewal thereof, the Lessor shall receive an acceptable offer for the sale of the particular lands demised herein, the Lessor agrees not to accept such offer or make any contract of sale thereof, without first affording the Lessees named herein, their heirs, executors, administrators and assigns, the right to acquire and purchase said lands upon the same terms and conditions as are contained in such acceptable offer of purchase. The Lessor agrees to give the Lessees, their heirs, executors, administrators and assigns, notice in writing by registered mail of the terms and conditions of such acceptable offer, and if the Lessees fail to enter into a bona fide contract upon the same terms and conditions as those proposed to the Lessor by the prospective purchaser of said lands, within thirty (30) days after the receipt of such registered notice, then the Lessor shall have the right, and shall be at liberty to make a contract for the sale of said lands subject to the balance of the term of this lease."

Mrs. Joseff with a letter which made known to her the fact that the tenants desired to renew the lease for another 5-year period. In June 1963 further inquiry was made by the tenants as to the possibility of renewal. The tenants received no response to these inquiries.

By letter dated 24 January 1964 the tenants forwarded the form of renewal lease for the 1964–1969 term, signed and acknowledged by the tenants, together with the check for the sum of $1200. We quote from the letter.

"Re: American Ranch Lease

"Dear Mrs. Joseff:

"Please find enclosed herewith our firm check in the sum of $1,200.00 in payment of the annual rental installment on the ranch, which will become due April 1, 1964.

"We notice that the term of the existing Lease will expire at the end of March, 1964, and have, therefore, enclosed herewith a new Lease, for an additional five year period, containing the same terms that were incorporated in the former Lease.

"If this new Lease meets with your approval, will you please execute the original and return it to this office in the enclosed, self-addressed and stamped envelope.

"With kind personal regards, we remain,"

The check referred to in the above-quoted letter is the check earlier referred to in this opinion, that is, the one which Mrs. Joseff signed and deposited for collection. There is no writing or notation on the check which identifies the check as being a rental payment for the year commencing 1 April 1964. While the dates of the various banks stamps on the reverse side of the check are indistinct, one of these clearly shows the date of 7 February 1964. The tenants became aware that the check had cleared their bank account. They were accustomed to late communications or lack of communications from Mrs.

Joseff. After the check had cleared their bank account they remained in possession of the ranch and entered into contracts, consistent with the lease, believing themselves to have been successful in securing a renewal for the 1964–1969 period.

Sometime in May 1964 the tenants learned of the contracts for the sale of the ranch to the appellees Rubel and Savoini. The tenants believed that there were circumstances which indicated that Rubel had contacted Mrs. Joseff concerning the sale of the ranch prior to the expiration of the 1959–1964 lease. By their answers to the interrogatories, the jury found this to not be so and the judgment of the trial court had the effect of adopting these answers. Mrs. Joseff entered into contracts to sell the ranch to Rubel and Savoini; she affixed her signature to the contracts on 19 May 1964. After the controversy arose, these contracts were rescinded by the contracting parties under date of 20 July 1964.

The tenants were upset to learn of the sale and demanded the right of first refusal. Mrs. Joseff consulted her California attorney who on 23 June 1964 wrote to the tenants. We quote this letter as follows:

"As attorney for Mrs. Joseff, I am enclosing herewith a check from her made payable to you in the amount of eight hundred dollars.

"Your check for twelve hundred dollars which accompanied your offer for a five year renewal of your previous lease was cashed by her through inadvertence in the mistaken assumption that the check was payment for the final year of your previous lease.

"The four.hundred dollars difference has been deducted to cover your occupancy of the American Ranch for the months of April, May, June and July of 1964. "While Mrs. Joseff may have indicated to Mr. A. L. Favour that she might be amenable to an extension of the lease then extant, the matter was one of preliminary negotiations only and should not be construed as a substitute for a for-

malized agreement which has been the past custom of the parties.

"Our position is that the lease which expired on April 1, 1964 has not been renewed and in the absence of the usual formalities of renewal, your entering into subleases was premature.

"Until this matter has been resolved I urge you most strongly to refrain from entering into contractual agreements with third parties in a manner inconsistent with our position."

The tenants refused the $800 and returned the check to Mrs. Joseff. The tenants, before 1 April 1965, tendered $1200 rent for the period beginning 1 April 1965 which was refused. Mrs. Joseff gave notice to the tenants that she terminated their right of occupancy as of 31 March 1965. The tenants did not vacate. At no time has Mrs. Joseff offered the tenants the first right of refusal.

## THE JOSEFF CONTRACTS OF SALE

The records support the fact that Rubel first contacted Mrs. Joseff by a personal visit in her California office on 1 April 1964. His first inquiry was as to whether there was an effective lease for the term beginning 1 April 1964. Mrs. Joseff produced the form of lease which had been signed by the tenants and showed Rubel that she had not executed the proposed 1964–1969 lease. She assured Rubel that as of 1 April 1964 there was no existing lease with reference to the ranch. Thereafter there were free negotiations which resulted in contracts which Rubel and Savoini signed on 18 May 1964 and which Rubel personally took to Mrs. Joseff in California where she signed on 19 May 1964.

## HOLDOVER TENANCY

In the conference discussions of this case after the oral argument on the merits of the matter, the Judges questioned whether there might be a holdover tenancy. The Judges believed that possibly this should receive a more complete analysis than set forth in the regular briefs. A joint letter was written to both counsel requesting additional briefs. In the letter the Court made reference to A.R.S. § 33–342 and to the case of Alabam Freight Lines v. Stewart, 70 Ariz. 140, 217 P.2d 586 (1950). The suggested briefs were submitted by counsel. The tenants urged that the principles of holdover tenancy were not applicable. The appellees urged the presence of some aspects of a holdover tenancy but urged that the first refusal right expired on 31 March 1964 and that the first refusal right could not be considered as a portion of any holdover tenancy. Under these circumstances the Court has given no further consideration to the question raised by it in the post-argument inquiry.

## THE INTERROGATORIES

Early in this opinion we stated that we would give further consideration to the jury's answers to the two interrogatories relative to Mrs. Joseff. We do not set forth the interrogatories as to Rubel and Savoini. Over the tenants' objections the trial court instructed the jury that the evidence must be clear and convincing. We are not called upon to decide whether this was a proper instruction.

■ It is interesting to note that nine jurors signed the answers to each of the four interrogatories. Six jurors signed all four of the answers. Of the three additional jurors who answered favorably to Rubel and Savoini, none signed the interrogatories in relation to Mrs. Joseff. Of the three additional jurors who signed the interrogatories relative to Mrs. Joseff, none signed the Rubel-Savoini interrogatories. Omitting the names of the jurors, we quote the two interrogatories with reference to Mrs. Joseff and the answers thereto.

"INTERROGATORY NO. 1. When Joan Castle Joseff endorsed and deposited the Plaintiff's Check for $1,200.00 on February 3, 1964, did she do it believing the $1,200.00 represented the first year's rent on the new lease on the American Ranch for the period 1964 through 1969 which accompanied the check? The answer YES is marked.

"INTERROGATORY No. 2: When Joan Castle Joseff endorsed and deposited the plaintiff's check for $1,200 on February 3, 1964, did she do it believeing (sic) the $1,200.00 represented rents due her on the lease then existing on the American Ranch for the last year's rent? Answered NO."

Here there were no specific findings of fact entered by the trial court, only conclusions of law as reflected by the heretofore quoted minute entry order. There was some conflict in the evidence and, in our opinion, the evidence was sufficient to support the foregoing answers to the interrogatories. We again quote the trial judge's post-judgment order, this time in part:

"The evidence herein, both oral and documentary, is insufficient to overcome the Statute of Frauds defense * * *."

The foregoing means to this Court that the trial court held that even adopting the answers to the interrogatories, the law applicable thereto did not permit the tenants to prevail as against the defense of the statute of frauds. We do not agree.

■ The "memorandum" of the agreement "in writing and signed by the party to be charged" (A.R.S. § 44–101) need not be a single document and that which has been "signed by the party to be charged" may be one of several documents. In our opinion this rule has been established by the Arizona Supreme Court by the following cases. Bartlett-Heard Land and Cattle Company v. Harris, 28 Ariz. 497, 238 P. 327 (1925); Carley v. Lee, 58 Ariz. 268, 119 P.2d 236 (1941); and LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966). There is respectable authority that to permit the signing of but one of two or more documents, the documents must have been physically attached to each other as by a staple or a clip. In our opinion such physical unity by affixing is not required. The tendered lease, the letter, and the check enclosed in but a single sealed envelope which was mailed to and received by Mrs. Joseff were as effectively fastened together as though they had been stapled together—

er. See 2 Corbin on Contracts 749 (1950) wherein it is stated that:

"* * * it may be quite sufficient that the signed paper was physically attached to the unsigned paper, *or that they were enclosed together within a containing envelope.*" (emphasis added)

We hold that when Mrs. Joseff endorsed the check in her own hand, deposited the same for collection and received the proceeds thereof, she effectively signed a memorandum negating the defense of the statute of frauds as to the 1964–1969 lease. The lease for that renewed period was effective on 1 April 1964. Rubel and Savoini innocently negotiated the sale with Mrs. Joseff; Rubel and Savoini believing that there was no lease then in existence. The tenants had the right of first refusal based upon the agreements of sale between Mrs. Joseff and Rubel and Savoini.

## CANCELLATION OF THE AGREEMENTS

■ The fact that Rubel and Savoini sought to avoid litigation by mutually agreeing with Mrs. Joseff on 20 July 1964 to cancel the agreements of sale did not deprive the tenants of their first right of refusal, a contract right which matured when the sales agreements were executed by the buyers on 18 May 1964 and by Mrs. Joseff on 19 May 1964. 1A Corbin on Contracts 473–74 (1963). The tenants have not been offered their contractual right of first refusal.

## SPECIFIC PERFORMANCE

■ In the trial court's post-judgment order, quoted in full earlier in this opinion, the trial court held in part:

"The evidence herein, both oral and documentary, * * * is insufficient to warrant the remedy of specific performance."

The Joseff contracts with Rubel and Savoini were freely negotiated. There was no overreaching. The evidence reflects a willing seller and willing buyers who freely entered into the terms of sale. Having

**476**

held, as we have, that the tenants had a contractual right of first refusal, we are in disagreement with the trial court as to the legal conclusion just above quoted and we hold that the evidence does sustain the remedy of *specific performance*. In this connection see Carley; LeBaron; and Meyer v. Warner, 104 Ariz. 44, 448 P.2d 394 (1968).

## ESTOPPEL

Under the facts and the decisions hereinbefore reached the Court finds it not necessary to decide whether the actions of Mrs. Joseff in retaining a portion of the $1200.00 tendered to her as the first year's rent for the 1964–1969 lease estopped her from denying the validity of the lease or from denying the validity of the tenants' claim to the right of first refusal.

This cause is affirmed as to the appellees Rubel and Savoini. This cause is reversed in favor of the appellants in relation to their claim against Mrs. Joseff and this matter is returned to the trial court for such further proceedings as are not inconsistent with this opinion.

CASE and DONOFRIO, JJ., concur.