850 P.2d 133

James M. PASSEY, Jr., as general partner of Flat Iron View, Partnership, Plaintiff, Counter–Defendant, Appellee,

v.

GREAT WESTERN ASSOCIATES II, a general partnership, Gregory Melikian and Robert Melikian, general partners, Defendants, Counter–Claimants, Appellants.

No. 1 CA–CV 91–113.

Court of Appeals of Arizona, Division 1, Department C.

March 2, 1993.

Killian, Nicholas, Fischer, Wirken, Cook & Pew by Charles W. Wirken, Mesa, for appellee.

Shimmel, Hill, Bishop & Gruender, P.C. by Richard B. Kelly, Steven Gregory Jones, Phoenix, for appellants.

## OPINION

TOCI, Judge.

Defendants, Great Western Associates and its partners ("Great Western"), are the purchasers of a note and beneficial interest in a deed of trust. They appeal from the trial court's judgment for the trustor, James Passey, against Great Western, enforcing an unsigned deed of trust addendum with an acreage release provision. This dispute over the addendum is rooted in an earlier real estate sales agreement between Passey and Great Western's predecessor, R and W partnership. In that sales agreement, the partnership agreed to the terms of the addendum. Before the sales agreement was performed, the partnership, for tax reasons, deeded the property to its partners, Ratliff and Willis, as tenants-in-common. Although Ratliff and Willis conveyed the real estate to Passey at close of escrow, they never executed the deed of trust addendum containing the acreage-release provision.

We find that the statute of frauds requirement of a signed writing prevents Passey from enforcing the acreage-release provision in the unsigned deed of trust addendum.

We therefore reverse the trial court's judgment and remand for proceedings consistent with this opinion. We hold that:
(1) the deed of trust beneficiaries are the parties charged with the addendum's acreage-release obligation; the statute of frauds required both original beneficiaries, as sellers of undivided interests in real property, to sign the deed of trust addendum;

(2) the escrow instructions, signed by both sellers when they were acting as partners, do not constitute a sufficient memorandum of the terms of the deed of trust addendum to satisfy the statute of frauds; such terms are neither set forth nor incorporated by reference in the escrow instructions;

(3) in the absence of written authority, the signature of one tenant-in-common does not bind a co-tenant and thus cannot satisfy the statute of frauds;

(4) because the parties to be charged in the deed of trust addendum are tenants-in-common, and not partners, the signature of the partnership on the sales agreement, agreeing to the terms of the deed of trust addendum, does not satisfy the statute of frauds; and

(5) the doctrine of equitable conversion applies only to agreements that are specifically enforceable; because neither the original sales agreement, the specimen deed of trust addendum, nor the recorded deed of trust addendum satisfies the statute of frauds, they are not specifically enforceable.

## FACTS AND PROCEDURAL HISTORY

Passey, a partner in Flat Iron View partnership ("Flat Iron"), negotiated the purchase of a 160–acre parcel in the Interstate 10 corridor west of Phoenix with Gregory Stewart ("Stewart"), a licensed Arizona real estate salesman representing the owners of the property, the Ratliff & Willis Partnership ("R & W partnership"). The attorney for R & W partnership prepared a Purchase and Sale Agreement ("sales agreement") dated May 23, 1986, naming R & W partnership as seller and Passey or his nominee as buyer.

The sales agreement provided that it would "constitute escrow instructions to [the] Escrow Agent" and referred to certain unsigned specimen documents, attached as exhibits, to be signed by the parties at the close of sale. The specimen documents consist of the following: a promissory note naming R & W partnership as payee; the deed of trust addendum to the deed of trust naming *both* R & W

partnership and Passey as parties; and a special warranty deed naming R & W partnership as grantor. Both the specimen note and the deed of trust addendum limited R & W partnership's recourse to the real property securing the note. The specimen deed of trust addendum further required the beneficiaries to release certain acreage upon the payment of $4,100 per acre.

When Stewart presented the sales agreement to Passey to sign, Passey found that the release terms in the deed of trust addendum did not precisely state the parties' agreement. After further discussion, the parties orally agreed that Passey would make the appropriate changes in the release provision and that both parties would initial the changes. Accordingly, Passey signed the sales agreement and, in his own handwriting on the specimen deed of trust addendum, reduced from $4,300 to $3,406 the sum the trustor would have to pay to obtain the release of one acre from the lien of the deed of trust. Additionally, Passey added handwritten words to the release clause in the deed of trust addendum so that he, as trustor, would be entitled to credit against the release of acreage for not only all principal payments made by the buyer, as the specimen deed of trust addendum originally provided, but also for the down payment. Passey then initialed the handwritten changes and returned the sales agreement to Stewart. Stewart forwarded the sales agreement to Ratliff, who signed the agreement on behalf of R & W partnership and initialed Passey's changes in the attached specimen deed of trust addendum.[1]

Although by its terms the sales agreement contained the escrow instructions, the title company also prepared form escrow instructions. The form escrow instructions were signed by Passey and by both Ratliff and Willis. The escrow instructions prepared by the title company refer to an "addendum attached hereto and made a part hereof for additional terms and conditions," but no addendum was attached to the form escrow instructions admitted in evidence.

Sometime prior to close of escrow, the parties to the sale changed. R & W partnership decided that, for tax reasons, a sale from Ratliff and Willis as tenants-in-common, rather than from the partnership, would benefit the partners. The record is not clear how title was transferred from the partnership to Ratliff and Willis as tenants-in-common, but neither party disputes that such did occur. In addition, Passey nominated Flat Iron, a partnership for which he was the general partner, as buyer.

Consequently, the parties revised the instruments so that Steven V. Ratliff and Larry D. Willis, each owning an undivided 50% interest in the property, appeared as grantors on the special warranty deed, payees under the promissory note, and beneficiaries under the deed of trust and the addendum. Flat Iron was named as the grantee, payor, and trustor respectively on such documents.

At close of escrow on October 10, 1986, the parties executed the documents to the transaction. Ratliff and Willis signed the special warranty deed as co-tenants, each conveying an undivided one-half interest in the real property to Flat Iron. Passey signed the promissory note and deed of trust on behalf of Flat Iron. After making and initialling the same changes in the deed of trust addendum that he had made to the specimen addendum to the sales agreement, Passey signed the deed of trust addendum. As he had done previously when R & W partnership appeared as seller in the transaction, Ratliff also initialed Passey's changes in the acreage-release price. The deed of trust addendum expressly named Ratliff and Willis as parties, each as to an undivided one-half interest. Neither, however, signed the addendum, and Willis never initialed Passey's changes in the addendum's acreage-release price. Ratliff and Willis recorded the deed of trust which

---

1. Although Ratliff's partner, Willis, neither signed the agreement nor initialled the addendum, we assume for the purposes of our discussion here that Ratliff's signature bound the partnership to the terms of the sales agreement.

expressly refers to the attached addendum. The two instruments each bear the same recorder's document number.

Later, Ratliff transferred his interest in the note and deed of trust to Willis, who in turn assigned the note and deed of trust to Global Equity Research Company ("Global"), a corporation wholly owned by Willis. Global then assigned its interest in the note and deed of trust to Great Western.

In September 1989, Flat Iron, while current in its obligations under the note and deed of trust, requested the release and reconveyance of 45.7 acres from Great Western. Great Western did not respond to this request. Nevertheless, on October 16, 1989, when Flat Iron failed to make its next payment under the promissory note, Great Western gave Flat Iron notice of breach and of a trustee's sale.

After receiving notice of the trustee's sale, Flat Iron, through its general partner, Passey, filed suit to enjoin the trustee's sale and to compel the release and reconveyance of 45.7 acres. In response, Great Western filed a counterclaim, alleging that Flat Iron was in default on the promissory note and requesting judgment for the principal balance. The trial court granted a temporary restraining order to prevent the trust sale from going forward and set the matter for trial. After making formal findings of fact, the trial court reached the following conclusions of law:

1. That the deed of trust incorporated by reference the addendum and it became an integral part thereof. That it was properly recorded and that recording imparted notice of the contents to all persons including subsequent purchasers. A.R.S. § 33–818;

2. That said deed of trust which incorporated by reference addendum B was signed by the party to be charged James M. Passey Jr. and therefore the transaction was not violative of the Statute of Frauds;

3. The promissory note is a non[-]recourse note. Because the court has found that the addendum is an integral

part of the deed of trust it strictly limited the liability of . . . Passey and Flat [Iron] Partners to the proceeds from the sale of the property.

The trial court entered judgment for Flat Iron, permanently enjoined sale of the real property prior to release of the requested acreage, and ordered the defendants to take the steps necessary to accomplish the release of the acreage. The court also dismissed the counterclaim and awarded attorneys' fees and court costs to Flat Iron. Great Western appeals from the judgment.

## DISCUSSION

### A. Standard of Review

An interpretation of an instrument is a question of law. *Huskie v. Ames Bros. Motor & Supply Co., Inc.*, 139 Ariz. 396, 401, 678 P.2d 977, 982 (App.1984). In reviewing questions of law, the appellate court is not bound by the findings of the trial court but is free to draw its own conclusions from the evidence presented. *Id.* at 396, 678 P.2d at 977; *Walsh v. Eberlein*, 114 Ariz. 342, 344, 560 P.2d 1249, 1251 (App.1976). We will affirm the trial court where it has reached the correct conclusion even though it gave a wrong or insufficient reason. *City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985); *In re Sherrill's Estate*, 92 Ariz. 39, 373 P.2d 353 (1962). Here, however, the trial court did not reach the proper conclusion.

### B. The Beneficiaries Are the Parties To Be Charged

We conclude that, because the original beneficiaries of the deed of trust are the parties charged with the acreage-release provision in the unsigned but recorded addendum to the deed of trust, the statute of frauds bars Passey from enforcing the provision against Great Western.

The statute of frauds bars a party's suit upon an agreement involving real property unless the agreement is in writing and is signed by the party to be charged. Ariz. Rev.Stat.Ann. ("A.R.S.") § 44–101.[2] The

---

2. Section 44–101 provides in relevant part:

No action shall be brought in any court in the following cases unless the promise or agree-

"party to be charged" is generally defined as the party against whom the contract is sought to be enforced. *Viramontes v. Fox*, 65 N.M. 275, 335 P.2d 1071 (1959); *Petroleum Exch. v. Poynter*, 64 N.W.2d 718 (N.D.1954); *Mitchell v. Schmelzer*, 191 Okl. 646, 132 P.2d 332 (1942); *see also Jolly v. Kent Realty, Inc.*, 151 Ariz. 506, 510, 729 P.2d 310, 314 (App.1986).

Although Flat Iron is the party to be charged under the deed of trust with the obligation to pay the deferred balance of the purchase price, it is not the party to be charged under the recorded addendum's acreage-release provision. Under the addendum, Flat Iron may obtain release of acreage from the deed of trust after paying $3,406 per acre. Flat Iron seeks to enforce the release provision against Great Western, and thus Great Western is the party charged with the obligation to perform. In order for Flat Iron to enforce the acreage-release provision, the statute of frauds requires that the original beneficiaries, Steven V. Ratliff and Larry D. Willis, must have signed the addendum.[3] Because neither signed the recorded addendum, the statute of frauds bars Flat Iron's action to enforce the acreage-release provision against Great Western.

### C. The Signatures of the Original Beneficiaries on the Escrow Instructions Did Not Satisfy the Statute of Frauds

Flat Iron contends that it was not necessary that the original beneficiaries sign the recorded deed of trust addendum because, when R & W partnership was the named seller in the transaction, both Ratliff and Willis signed the escrow instructions referring to the deed of trust addendum. We disagree. The escrow instruc-

tions, because they do not attach or incorporate the deed of trust addendum, and name different parties than the parties to be charged in the addendum, cannot constitute a sufficient memorandum to satisfy the statute of frauds.

The memorandum of the agreement need not be a single document. It may, in fact, be one of several documents. *Favour v. Joseff*, 16 Ariz.App. 470, 475, 494 P.2d 370, 375 (1972). In *Favour*, we said that although various documents do not need to be physically attached to each other to satisfy the statute of frauds, the documents must be "effectively fastened together." *Id.*

Here, however, we find that the deed of trust addendum was not "effectively fastened" to the escrow instructions. The escrow instructions neither clearly incorporate the deed of trust addendum nor attach the addendum as an exhibit. *See United California Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 268, 681 P.2d 390, 420 (App. 1984) (for a document to incorporate another document by reference, the reference must be clear and unequivocal). The form escrow instructions' reference to "an addendum attached hereto and made a part hereof for additional terms and conditions," is not a clear and unequivocal reference to the deed of trust addendum. Additionally, the escrow instructions admitted in evidence had nothing attached to them as an exhibit to which reference could be made.

More importantly, the escrow instructions in which R & W partnership appears as seller, and Passey as buyer, do not constitute a sufficient memorandum of the acreage-release provision in the recorded deed of trust addendum agreement between Steven V. Ratliff and Larry D. Wil-

---

ment upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

(6) ... upon an agreement ... for the sale of real property or an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged.

**3.** The deed of trust addendum clearly contemplated that both beneficiaries would sign. The first paragraph in the addendum provides: "Addendum To Deed Of Trust Dated October 10, 1986, between Flat Iron View, and Arizona general partnership, as trustor; Ticor Title Insurance Company as trustee; and Steven V. Ratliff, a married man dealing with his sole and separate property, and Larry D. Willis, a single man, each as to an undivided 50% interest, as beneficiary."

lis, tenants-in-common, and Flat Iron. For an agreement to satisfy the statute of frauds, it must "contain the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." *Register v. Coleman*, 130 Ariz. 9, 12, 633 P.2d 418, 421 (1981). Here, because the parties to the escrow instructions are different from the parties to the recorded deed of trust addendum, the escrow instructions do not constitute a memorandum that contains *all the promises constituting the contract and by whom and to whom the promises are made.*

### D. The Initials of One Tenant–in–Common on the Deed of Trust Addendum Do Not Satisfy the Statute of Frauds

■ Flat Iron also argues that Ratliff's initials next to the changes that Passey made in the acreage-release provision in the subsequently recorded deed of trust addendum satisfied the statute of frauds. We disagree. When Ratliff initialed the deed of trust addendum, he and Willis owned the property as tenants-in-common. Because Ratliff could not, in the absence of written authority from Willis, convey Willis' undivided one-half interest in the real property, Ratliff's initials did not comply with the statute of frauds.

Although, in certain circumstances, a party's initials may constitute the signature on a memorandum for purposes of the statute of frauds, Restatement (Second) of Contracts § 134,[4] the signature or initials of a tenant-in-common do not bind the other co-tenant in the absence of clear and proper authorization. *Jolly*, 151 Ariz. at 511, 729 P.2d at 315. To bind a co-tenant to a contract under the statute of frauds, such authorization must be in writing and signed by the co-tenant to be charged. A.R.S. § 44–101(6) (an agreement for the sale of real property, "if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be

charged"). Here, when the parties executed the closing documents, Ratliff did not have written authority to sign for Willis.

### E. Ratliff's Signing of the Sales Agreement for the Partnership Did Not Satisfy the Statute of Frauds

■ Flat Iron argues that, because Ratliff and Willis were partners, Ratliff's signature on the sales agreement and his initials on the specimen deed of trust addendum attached to the sales agreement satisfied the statute of frauds. Neither of those documents, however, is being sued upon. The *recorded* deed of trust addendum between Steven V. Ratliff and Larry D. Willis as tenants-in-common—unsigned by either of them—and Flat Iron, is the agreement sued upon. Ratliff and Willis as tenants-in-common are the parties to be charged under that instrument. Thus, Ratliff's signing of the sales agreement and initialing of the changes in the specimen deed of trust addendum for the R & W partnership neither binds the tenants-in-common nor satisfies the statute of frauds.

The statute of frauds is only satisfied by a memorandum of "the agreement upon which the action is brought," signed by the party to be charged under that agreement. A.R.S. § 44–101. "Where the language of a statute is plain and unambiguous, courts must generally follow the text as written." *Mid Kansas Fed. S. & L. v. Dynamic Dev.*, 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991) (citations omitted). We find that section 44–101 clearly provides that in order to comply with the statute of frauds, the memorandum must be of the *agreement upon which the action is brought* and that it be *in writing and signed by the party to be charged.*

Here, Flat Iron sued both Great Western and Ratliff and Willis, alleging breach of the recorded deed of trust addendum. The complaint states that "the defendants, Ratliff and Willis and successor beneficiary, Great Western, are in breach of the deed of trust and assignment of rents and the addendum ... for failing to release and re-

---

4. Section 134 states: "The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer."

convey the parcels described in plaintiff's request." In addition, Passey's affidavit in support of the application for preliminary injunction swears that his claim is based on a contract with Ratliff and Willis and Great Western and that he filed a "complaint seeking to enforce the contract." The *agreement upon which the action is brought* is clearly the recorded deed of trust addendum.

Thus, the sales agreement between the R & W partnership and Passey, with its attached specimen deed of trust addendum naming the partnership and Passey as parties, cannot be a memorandum of the *agreement upon which the action is brought.* Likewise, because we have already concluded that the parties to be charged in the recorded addendum are Ratliff and Willis as tenants-in-common, the sales agreement signed by the R & W partnership and Passey, to which the specimen deed of trust is attached, is not *signed by the parties to be charged.* Consequently, we conclude that under the plain language of A.R.S. section 44–101, Flat Iron cannot rely either on the sales agreement or the specimen deed of trust addendum as a writing which satisfies the statute of frauds.

### F. The Doctrine of Equitable Conversion Does Not Allow Passey to Circumvent the Statute of Frauds

Finally, Flat Iron theorizes that, under the doctrine of equitable conversion, ownership in the real estate was automatically conveyed to Passey when he signed the sales agreement with R & W partnership. Flat Iron argues that, as R & W partnership's successors, Ratliff and Willis were bound by Passey's right to enforce the acreage-release clause in the specimen deed of trust addendum "without having to individually express their agreement by signing." Thus, when Ratliff and Willis later assigned the note and their beneficial interest in the deed of trust, that interest was subject to the release clause in the specimen deed of trust addendum attached to the sales agreement. We are not persuaded by this argument.

The doctrine of equitable conversion does not apply to this case. Equitable conversion is a fiction devised by the common law as a solution to changed circumstances which arose after the creation of a valid contract for the sale of real estate but before the execution of a deed conveying legal title to the buyer. Richard R. Powell and Patrick J. Rohan, 6A *Powell on Real Property,* ¶ 881[1] at 81–95. In other words, when the buyer contracts to buy and the seller to sell, although legal title has not yet passed, equity treats as done that which should be done. *Lebrecht v. Beckett,* 96 Ariz. 389, 392, 396 P.2d 13, 15 (1964); Harlan F. Stone, *Equitable Conversion by Contract* 13 Col.L.Rev. 369, 371 (1913); Powell and Rohan at 81–98.

Although Arizona follows the doctrine of equitable conversion, *Lebrecht,* 96 Ariz. at 392, 396 P.2d at 15, citing Stone, the doctrine applies only to real estate contracts that are capable of being specifically performed. *Coe v. Hays,* 328 Md. 350, 614 A.2d 576, 580 (1992). Here, because Ratliff and Willis deeded the real property to Flat Iron at the close of escrow, the sales agreement, an executory agreement to convey real property, is no longer capable of specific performance; it has been performed.

Likewise, Flat Iron cannot apply the equitable conversion doctrine either to the specimen deed of trust addendum attached to the sales agreement or to the recorded deed of trust addendum. Neither addendum is a writing that satisfies the statute of frauds, and neither can work an equitable conversion or be specifically enforced. *See Stewart v. Schnepf,* 62 Ariz. 440, 458, 158 P.2d 529, 537 (1945) (land contracts that do not meet statute of frauds will be denied specific performance); *see also* Stone at 382 (contract not complying with the statute of frauds will not work an equitable conversion and parties will be left to their rights at law); Powell and Rohan at 81–99 to 81–100 (equitable conversation does not apply to contracts that do not satisfy the statute of frauds). Consequently, Flat Iron cannot use the doctrine to enforce the acreage-release provision against Great Western.

CONCLUSION

For the reasons explained in this decision, we reverse the trial court's judgment and remand for proceedings consistent with this opinion. Appellant Great Western requests attorneys' fees on appeal pursuant to A.R.S. section 12–341.01. We grant the award of attorneys' fees in an amount to be determined after appellant's compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

GERBER, P.J., and McGREGOR, J., concur.