748 P.2d 504

**C. LAMBERT & ASSOCIATES, INC., a New Mexico corporation, and Calabacillas Group, a New Mexico general partnership composed of George Lambert, William O. Edward and Donald D. Harville, Plaintiffs–Appellees and Cross–Appellants,**

v.

**HORIZON CORPORATION, a Delaware corporation, Defendant–Appellant and Cross–Appellee.**

No. 16913.

Supreme Court of New Mexico.

Jan. 6, 1988.

Turner W. Branch, Albuquerque, for defendant-appellant and cross-appellee.

Keleher & McLeod, Arthur O. Beach, Helen G. Hillegass, Albuquerque, for plaintiffs-appellees and cross-appellants.

## OPINION

SOSA, Senior Justice.

Appellee and cross-appellant G. Lambert & Associates (Lambert) filed its complaint for money damages against appellant and cross-appellee, Horizon Corporation (Horizon), alleging that Horizon breached a contract for sale of real property, and that Horizon fraudulently and negligently misrepresented the facts concerning the details of the property. Trial without jury held on August 19, 1986 focused on two issues: (1) whether Horizon conveyed to Lambert less acreage than Lambert had contracted for; and (2) whether Horizon had failed to tell Lambert of an encumbrance on the land consisting of the flood waters of the "Black Arroyo," raising the possibility that Lambert and other landowners would have to expend large sums of money to construct a concrete drainage

ditch or other channel to divert the waters of the arroyo from their properties.

As to the first issue, the trial court in its judgment ruled that Horizon conveyed to Lambert 1.3154 acres less than the amount agreed upon in the contract, and that since the price of the contract should have been accordingly reduced by $26,308.00, Lambert was entitled to damages in that amount. (The price for the property was $20,000 per acre; 36 acres were conveyed at a total price of $720,000.) As to the issue of the arroyo, the court in its findings of fact and conclusions of law determined that Lambert was fully knowledgeable as to the facts surrounding the arroyo and that he knowingly and willingly took the land in its natural state, encumbered by the arroyo. Horizon appeals the court's judgment as to the first issue, and Lambert appeals the court's judgment as to the second. Lambert contends that the court erred in refusing to issue a declaratory judgment ruling that Lambert has no financial obligation to participate in constructing any channel diverting the waters of the Black Arroyo or in otherwise helping Horizon solve the problem caused by the arroyo's flooding.

We affirm the judgment of the trial court as to both issues.

## FACTS

The contract between the parties reads in pertinent part as follows:

*Paragraph 6*

The property is sold and conveyed "as is"; any statement, representation, or disclosure to the contrary notwithstanding, and no representation has been made by Seller with respect to the value, appreciation, resale, repurchase, condition, use, development, environmental or governmental regulations, zoning laws or regulating or other like representations or any of them. Buyer acknowledges having made a thorough investigation and inspection of the property and does not rely on Seller in any manner in making this purchase. Buyer further acknowledges that it is aware of the natural drainageways flowing across the property and that further work may be required in channelizing the drainage. Buyer agrees that nothing shall be done to change the natural flow of the water in any manner which increases the flow on properties outside of the property being purchased and further agrees to cooperate with Seller, AMAFCA and the County of Bernalillo in working out a reasonable solution of any drainage problems which may exist or arise and to bear its share of any costs thereof.

Lambert contends that the words "natural drainageway" are ambiguous, calling for the use of parol evidence to explain the ambiguity. Lambert asserts that he was led to believe by Horizon that "natural drainageway" refers not to the Black Arroyo, but to a surface "swale" which runs across the property. Lambert maintains it has always been willing to assume responsibility for any problems associated with the swale.

Horizon contends that the words "natural drainageway" refer to the Black Arroyo. Horizon also contends that the phrase "as is" is likewise self-evident, so that in purchasing the land under the contract Lambert assumed the risk of any deficiency in the acreage of the property. In its findings of fact the court found that "[a]n Arroyo is a natural drainageway." The court also found that "George Lambert is a knowledgeable and sophisticated real estate broker with 20 years of experience," and "had inspected and investigated Tracts A, B, C, D and E of Paradise Heights Unit 1 prior to entering into the Contract to purchase these tracts from Defendant Horizon Corporation."

The court nonetheless found for Lambert as to the issue of the acreage conveyed, because "[p]rior to closing, Horizon Corporation did not advise [Lambert] that it had realigned Golf Course Road and that it had not vacated the old alignment of Golf Course Road." As to the issue of the arroyo, however, the court allowed the contract to speak for itself, and denied Lambert relief, failing to make any statement whatsoever in the judgment concerning the issue of the arroyo, whether supportive of Horizon or of Lambert. Lambert assigns

this as error, and asserts that the court's failure to make appropriate findings of fact and conclusions of law concerning the issue of the declaratory judgment as to its responsibility to help pay for any diversion of the Black Arroyo flood waters and the issues of misrepresentation, may be corrected on appeal, in that we may review the trial court's record and adopt our own conclusions of law.

Lambert's property, Tracts A, B, C, D and E lie between Dragoon Street (southwest), Benton Avenue (southeast) and Westside Boulevard (north) of the Paradise Heights Subdivision in Albuquerque. Westside Boulevard lies due south of the county line separating Sandoval County and Bernalillo County. Between Tracts D and E to the east and B and C to the west runs Golf Course Road, a road that originally ran straight in a north-south direction intersecting Dragoon Street and Benton Avenue and proceeding north toward Westside Boulevard. In 1974, however, Golf Course Road was realigned to meet a road coming south from Sandoval County. When it was realigned, the road was curved to the west, encroaching onto what eventually became Lambert's Tract B, when he purchased that tract in 1983. The portion of the original alignment not vacated by Horizon amounts to 0.643 acres. Between the original and new alignment lies 0.0506 acres which are not useable by Lambert. A survey of the property revealed that instead of 36.00 acres having been conveyed, only 35.3782 acres had been conveyed, or 0.6218 acres less than required by the contract. Thus, the total shortage as calculated by the court amounts to: $0.6430 + 0.0506 + 0.6218 = 1.3154$ acres, times $20,000 = \$26,308$ in damages.

**THE ISSUE OF THE REDUCED ACREAGE**

▇▇▇▇ Horizon argues on appeal that the court erred in awarding damages under an "as is" contract that was a sale in gross rather than a sale by acre. The evidence at trial disputes Horizon's contention. For example, James Folkman, Horizon's vice-president and division manager, testified as follows:

Q. Did you quote a price to Mr. Lambert for that property?

\*     \*     \*     \*     \*     \*

A. \* \* \* Well, we may have discussed a couple of different prices. I don't recall. It was sometime ago. $20,000 is certainly a figure that sticks in my mind.

Q. Was it $20,000 an acre?

A. Yeah, it was $20,000 an acre \* \* \*. I think that probably we had sold a piece to [Lambert] prior to that that was closer to the developed area for $20,000 an acre, which sort of set a base price for the general area. The fact that these parcels were close to an obvious drainage problem we felt that $20,000 an acre was a fair price because even if the arroyo didn't affect the property, it still was an unsightly thing to have near the property. So we felt that $20,000 an acre was a fair price \* \* \*.

Horizon argues that because paragraph 2 of the contract reads, "The purchase price for the property shall be Seven Hundred Twenty Thousand Dollars ($720,000) \* \* \*," the sale constitutes a sale in gross and such testimony as that given above is parol and inadmissible. Yet, it seems to us that Folkman's testimony is a legitimate explanation of two ambiguous parts of the contract, paragraph 2, just quoted, and paragraph 1, in which the total acreage is set forth as "36.0 acres." If there were 36.0 acres sold for $720,000 the question arises whether this was a single tract sold at a single price, or whether the subject of the sale was thirty-six acres, more or less, or thirty-six acres specifically. In resolving this ambiguity it is clear that the testimony, as well as the plan of development, make it clear that it was the latter rather than the former. "Whether [a sale of real estate] was a sale in gross or by acre, depends upon the intention of the parties. In arriving at the intention of the parties, and that is the test to be applied in this class of cases, we must look to the whole contract, rather than to a single recital." *Branch v. Walker*, 56 N.M. 594, 601, 247 P.2d 172, 177 (1952).

▇▇▇▇ With respect to the "as is" clause of paragraph 6 of the contract and the

court's finding of damages, it is our opinion that an "as is" clause provides absolute protection to a seller such as Horizon only when the buyer and seller possess equal knowledge of the property. Here, while Lambert's knowledge of the property was equal to that of Horizon's insofar as most essentials of the contract were concerned, Lambert relied on Horizon for its knowledge of the total acreage in the property, and for such information as would have informed him about the realignment of Golf Course Road. Hence the trial court did not err in finding damages as to the realignment of Golf Course Road despite the "as is" clause. *See Archuleta v. Kopp,* 90 N.M. 273, 562 P.2d 834 (Ct.App.), *cert. dismissed,* 90 N.M. 636, 567 P.2d 485 (1977).

## THE ISSUE OF THE ARROYO

■ If as to the issue of the realignment of Golf Course Road and the total number of acres conveyed the parties were not in possession of equal knowledge, when the issue of the arroyo is raised, it is clear that Lambert did have knowledge of the property equal to that of Horizon. Indeed, it appears from the testimony of past officers of Horizon that Lambert's knowledge as to the arroyo may in some respects have been superior to that of Horizon. Lambert's principal argument against the terms of paragraph 6 of the contract insofar as it applies to the arroyo is that he talked to Horizon's legal counsel before signing the contract and was told that "natural drainageway" did not refer to the arroyo, but referred to a swale running north and south across the property.

Yet, the court found in its findings of fact that Lambert (1) "read and agreed to all the terms and conditions of the Contract," (2) "had personal knowledge of, and had inspected and investigated" the property before entering into the contract, (3) that George Lambert "is a knowledgeable and sophisticated real estate broker with 20 years of experience" and that he had available to him certain engineering drainage studies dealing with the problems of the arroyo, and (4) "[a]n Arroyo is a natural drainageway." We have no reason to dis-

pute any of these findings since they are all supported by substantial evidence. "[T]he circumstances surrounding the Agreement, the import of that Agreement as a whole, and the undisputed parol evidence of the parties show that [Lambert's] right to acquire [Horizon's] interests was not conditioned upon ..." [an interpretation of "natural drainageway" as a "swale".] *Schaefer v. Hinkle,* 93 N.M. 129, 131, 597 P.2d 314, 316 (1979); *see also Smith v. Price's Creameries,* 98 N.M. 541, 544, 650 P.2d 825, 828 (1982), which likewise involved the issue of a conflict between contractual language and alleged oral assurances modifying the contractual language.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

WALTERS and RANSOM, JJ., concur.