31 P.3d 123

The S DEVELOPMENT COMPANY, an Arizona corporation; and Presidio North Limited Partnership, an Arizona limited partnership, Plaintiffs–Appellees,

v.

PIMA CAPITAL MANAGEMENT CO., an Arizona corporation; and Lincoln Life & Casualty, a Nebraska corporation, Defendants–Appellants.

No. 1 CA–CV–00–0347.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 30, 2001.

Review Denied Jan. 8, 2002.

Dalton Gotto Samson & Kilgard, P.L.C. by Ron Kilgard and Mark A. Fuller, Phoenix, Attorneys for Plaintiffs–Appellees.

Osborn Maledon, P.A., by David G. Campbell and Thomas L. Hudson, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

GARBARINO, Presiding Judge.

¶ 1 We are called upon to determine the effect, if any, that a disclaimer of warranties, or an "as is" provision, in a purchase contract for commercial property has on a vendor's duty to disclose defects in the physical condition of a property being sold. We hold that latent defects in a property sold "as is" that are known to the vendor must be disclosed to the purchaser. We also hold that a vendor may be held liable for negligent nondisclosure of facts basic to the transaction when the purchaser is precluded by the vendor from discovering those facts.

¶ 2 The appellants, Pima Capital Management Company and Lincoln Life & Casualty, appeal a jury verdict awarding $3,690,000 in damages to the appellees, The S Development Company and Presidio North Limited Partnership, for the appellants' negligent nondisclosure of facts basic to the parties' transaction. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 3 Because this is an appeal from a jury verdict, we view the evidence in the light most favorable to upholding the jury verdict. *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4, 3 P.3d 988, 989 (App.1999). The appellees purchased two Phoenix apartment complexes, Presidio North and Bell Tower, from the appellants in July 1993. Both purchase contracts contained substantially similar provisions, which stated:

> *Disclaimer of Warranties.* Buyer acknowledges that except as expressly set forth in this Agreement, Seller makes and has made no representations or warranties of any kind whatsoever, including but not limited to warranties concerning the condition of title, physical condition, encroachments, access, zoning, value, future value, income potential, any survey, environmental report or other information prepared by third parties, loan assumability,[1] or the presence on or absence from the Property of any hazardous materials or underground storage tanks. *Buyer is purchasing the Property as a result of its own examination thereof in its "AS IS" condition, and upon the exercise of its own judgment and investigation.*

(Emphasis added.) Both contracts also contained provisions granting the appellees the right to inspect the property:

> *Buyer's Inspection.* During the Review Period described ... below, Buyer and Buyer's agents, servants, employees and independent contractors shall have reasonable access to the Property for the purpose of investigating the condition of the same,

---

1. The purchase contract for Bell Tower did not contain the disclaimer of loan assumability.

and for any other reasonable purpose which relates to the potential use, occupancy, operation and maintenance of the Property; provided, however, that in conducting such investigations ... (ii) *Buyer shall not injure or damage the Property....* (Emphasis added.)

¶ 4 Prior to the close of escrows, the appellees retained two engineering firms to inspect each of the buildings to be purchased. The inspections did not reveal any substantial problems with the plumbing in the buildings. Approximately two years after closing, however, the appellees learned that polybutylene pipe (PB pipe) had been used in both Presidio North's and Bell Tower's plumbing. PB pipe is a defective type of flexible tubing that will fail and leak when it is used to transport warm water under normal water pressures.[2] The appellants claim that they were not aware that PB pipe had been used in the buildings when they sold the buildings to the appellees and, therefore, they could not and did not disclose that condition to the appellees prior to the sale.

¶ 5 The appellees sued the appellants alleging fraud and nondisclosure for failing to disclose the defective plumbing prior to the close of escrows. The appellants moved for summary judgment arguing that the "as is" provisions in the purchase contracts relieved them of any duty to disclose the defective plumbing, even if they had actual knowledge of the condition. The trial court denied the appellants' summary judgment motion and the case proceeded to trial. The trial court granted the appellants' motion for judgment as a matter of law on the appellees' punitive damages claim after the case-in-chief, but denied the appellants' motions for judgment as a matter of law on the other causes of action after the close of all of the evidence, and after the jury rendered its verdict. The trial court also denied the appellants' motion for a new trial and motion to alter or amend the judgment. The jury returned a verdict

in favor of the appellants on the fraud claim, but awarded the appellees $3,690,000 in damages on the nondisclosure claim. The appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) § 12–2101(B) and (F)(1) (1994).

## ISSUES

¶ 6 The appellants raise the following issues on appeal:

1. Whether the trial court erred by denying the appellants' motion for judgment as a matter of law in light of the purchase contracts' "as is" clauses;

2. Whether the trial court erred by refusing to give an instruction on the legal effect of an "as is" clause;

3. Whether the trial court erred by instructing the jury that the appellants could have imputed knowledge of the defective plumbing;

4. Whether the trial court erred by precluding evidence of repairs made to the defective plumbing paid for by settlement proceeds from the plumbing manufacturer;

5. Whether the trial court erred by precluding evidence of the appellants' offer to rescind the purchase contracts;

6. Whether the trial court erred by refusing to give the jury an avoidable consequences instruction; and

7. Whether sufficient evidence supported the jury's consequential damages award.

## DISCUSSION

I. *The "As Is" Provisions and the Appellants' Motion for Judgment as a Matter of Law*

¶ 7 The appellees' claim for nondisclosure is predicated on the Restatement (Second) of Torts § 551 (1977). The appellees devote much of their brief to refute the appellants'

---

2. *See Barrett v. United States Brass Corp.*, 864 S.W.2d 606, 612 (Tex.Ct.App.1993) ("A polybutylene plumbing system consists of molded plastic (Celcon) insert fittings, polybutylene pipe extruded from polybutylene resin, and aluminum or copper crimp rings. Plumbers install the plumbing system by placing the crimp ring over the end of the pipe, pushing the fitting inside the pipe, and then using a crimp tool to crimp the ring around the outside of the pipe and fitting. The pressure from the crimp ring deforms the pipe and the fitting to make a water-tight seal with the fitting."), *rev'd, Amstadt v. United States Brass Corp.*, 919 S.W.2d 644 (Tex.1996).

argument that the "as is" clauses in the purchase contracts relieve them of tort liability for nondisclosure. The appellants are not, however, arguing that the insertion of the "as is" clauses in the purchase contracts relieves them, as a matter of law, of all tort liability for nondisclosure. Rather, they argue that the "as is" clauses pertain only to one element of the tort of nondisclosure-the duty element.

¶ 8 Section 551 of the Restatement (Second) of Torts places the burden on a plaintiff who claims that a defendant negligently failed to disclose facts basic [3] to the transaction:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, *if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.*

Restatement (Second) of Torts § 551(1) (emphasis added). The appellants do not dispute that the appellees argued, and the jury was instructed, that the appellants' duty to disclose arose under § 551(2)(e) of the Restatement (Second) of Torts, which provides as follows:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> . . . .
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2)(e). Essentially, the appellants argue that they were under no duty to disclose the defective plumbing to the appellees by operation of the "as is" clauses; that the "as is" clauses effectively shifted the burden of discovering the defect to the appellees and, therefore, the appellants are not liable for the appellees' failure to discover the defect, and they should have been granted judgment as a matter of law.

■ ¶ 9 First, we find merit in the appellees' argument that the existence of an "as is" provision in a purchase contract generally operates only as a waiver of breach of warranty claims, not tort claims. *See, e.g., Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.,* 143 Ariz. 368, 384, 694 P.2d 198, 214 (1984) (stating that "[w]hile parties to a contract may 'disclaim responsibility for any potential [tort] liability . . . they must *expressly* spell out their intention'" (emphasis added) (quoting *Penn. Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1175 (3d Cir.1981))); *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1055 (D.Ariz.1984) ("[T]he warranty disclaimer is effective to preclude only causes of action which are based upon breach of warranty theory."), *aff'd,* 804 F.2d 1454 (9th Cir.1986); *Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994, 1001 (D.N.J.1988) ("[A]n 'as is' provision is merely a warranty disclaimer and as such precludes only claims based on breach of warranty."); *Prudential Ins. Co. of Am. v. Jefferson Assocs.,* 896 S.W.2d 156, 162 (Tex.1995) ("A buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of a fraudulent representation or concealment of information by the seller."). A review of the disclaimer provisions at issue here does not evince an intent by the appellees to waive any tort remedies that may be available to them.

■ ¶ 10 We also agree with the appellants' argument that the "as is" clauses may

---

**3.** The Restatement (Second) of Torts describes a fact basic to the transaction as

> a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic.

Restatement (Second) of Torts § 551 cmt. j.

affect the duty of a vendor to disclose facts that are basic to the transaction and, therefore, preclude tort liability. We do not agree with the appellants that the facts of this case relieve them, as a matter of law, from the obligation to disclose the defective plumbing.

¶ 11 We begin by recognizing that Arizona law "implies a covenant of good faith and fair dealing in every contract" so that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). In keeping with the covenant of good faith and fair dealing, we hold that a vendor *must* disclose *latent* defects in property that are known to the vendor, notwithstanding the existence of a burden-shifting "as is" clause or disclaimer of warranties.[4]

¶ 12 A latent defect is defined as "[a] hidden or concealed defect. One which could not be discovered by reasonable and customary observation or inspection...." Black's Law Dictionary 611 (Abridged 6th ed.1991). Nondisclosure to the purchaser of latent defects known to the vendor "impair[s] the right of the [purchaser] to receive the benefits" of the contract. *Rawlings*, 151 Ariz. at 153, 726 P.2d at 569. The very nature of a latent defect precludes the discovery of the defect upon a reasonable inspection. To hold otherwise would allow vendors to conceal latent problems with the property and "hide behind contract language purporting to shift the risk of nondisclosure

to the purchaser." *Haney*, 839 F.Supp. at 757. We are confident that this result would offend the implied covenant of good faith and fair dealing that the law incorporates into every contract. *See* Restatement (Second) of Torts § 551 cmt. *l.* If the defective plumbing was a latent defect known to the appellants and that defective plumbing was a fact basic to the transaction, the appellants were under an obligation to disclose that condition regardless of the "as is" clause.

¶ 13 We also find support for our holding in the commentary to § 551 of the Restatement (Second) of Torts. Comment j states in part that "[i]f the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure." Restatement (Second) of Torts § 551 cmt. j. An "as is" clause shifts the burden of discovering those facts that are basic to the transaction. The commentary indicates, however, that the burden shifts to the other party to discover *patent* facts-facts that are discoverable upon a reasonable inspection.[5]

> The rule stated in Subsection (1) reflects the traditional ethics of bargaining between adversaries, in the absence of any special reason for the application of a different rule. *When the facts are patent ... there is no obligation to give aid to a bargaining antagonist by disclosing what the defendant has himself discovered.*

Restatement (Second) of Torts § 551 cmt. k; *see also Lorenzo v. Noel*, 206 Mich.App. 682,

---

**4.** *See Haney v. Castle Meadows, Inc.*, 839 F.Supp. 753, 757 (D.Colo.1993) ("While the parties can contractually alter the allocation of risk as to defects of which neither party has knowledge, a seller who actually knows there is a latent defect on the property and chooses not to reveal this to the purchaser cannot hide behind contract language purporting to shift the risk of nondisclosure to the purchaser." (citing *Brewer v. Brothers*, 82 Ohio App.3d 148, 611 N.E.2d 492, 495 (1992))); *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561, 567 (1990) ("[T]he existence of an 'as is' clause in a contract of sale for real estate will not relieve the vendor of his obligation to disclose a condition which substantially affects the value or habitability of the property and which condition is known to the vendor, but not to the purchaser, and would not be disclosed by a reasonable and diligent inspection."); *Mulkey*

*v. Waggoner*, 177 Ga.App. 165, 338 S.E.2d 755, 757 (1985) ("[T]he effect of an 'as is' clause on the passive concealment liability arising out of the duty to disclose ... concerns itself with obvious defects or at least those which are reasonably discernable."). *But see Eiland v. Coldwell Banker Hunter Realty*, 122 Ohio App.3d 446, 702 N.E.2d 116, 123 (1997) ("If a purchase agreement states that the buyer purchases real property in its 'as is' physical condition ... the vendor has no duty to disclose latent defects.").

**5.** Black's Law Dictionary defines a "patent defect" as one that "is plainly visible or which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence." Black's Law Dictionary 779 (Abridged 6th ed.1991).

522 N.W.2d 724, 726–27 (1994) (" 'As is' clauses allocate the risk of loss arising from conditions unknown to the parties. . . . 'As is' clauses also transfer the risk of loss where the defect should have reasonably been discovered upon inspection, but was not." (citation omitted)); *Jaffe v. Bolton,* 817 S.W.2d 19, 25 (Tenn.Ct.App.1991) ("[An] 'as-is' clause basically refers to the obvious or reasonably discernible defects in the property."); *Conahan v. Fisher,* 186 Mich.App. 48, 463 N.W.2d 118, 119 (1990) (per curiam) ("Generally, the buyer bears the risk of loss under an 'as is' contract unless the seller fails to disclose concealed defects known to him."); *C. Lambert & Assocs. v. Horizon Corp.,* 106 N.M. 661, 748 P.2d 504, 507 (1988) ("[A]n 'as is' clause provides absolute protection to a seller . . . only when the buyer and seller possess equal knowledge of the property."); William L. Prosser, *Handbook of the Law of Torts* § 106, at 697–98 (4th ed. 1971) ("[T]here has been a rather amorphous tendency on the part of most courts to find a duty of disclosure in cases where the defendant has special knowledge, or means of knowledge, not open to the plaintiff. . . . This has now generally been extended to any facts or conditions basic to the transaction. . . .").

¶ 14 Even if we assume that the plumbing defect in this case was a "patent defect," the jury was free to conclude that the "as is" clauses did not protect the appellants because the buyers were not given a chance to investigate. The Restatement (Second) of Torts further indicates that "when the plaintiff has equal opportunity for obtaining information that he may be expected to utilize if he cares to do so," then the defendant is not under a duty to disclose. Restatement (Sec-

ond) of Torts § 551 cmt. k. The evidence developed at trial demonstrates that, even if the plumbing defects were patent defects, the appellees did not have an "equal opportunity" to discover the defects because 1) the defective pipe was buried six inches inside the walls; 2) the contracts precluded the appellees from damaging the property; 3) the appellants' property manager would not allow the appellees to inspect inside the walls of either building; and 4) all visible plumbing was copper piping. This is logical because, although a defect could be discovered upon inspection, preventing a party from conducting an inspection effectively turns what may be a patent defect into an undiscoverable-in-fact latent defect.

¶ 15 Simply stated, in the face of an "as is" sale, the rule of *caveat emptor* continues to apply and the vendor may be insulated from liability for nondisclosure of facts basic to the transaction if the facts at issue are patent, or if the purchaser has been given an appropriate opportunity to discover latent defects. *See Universal Inv. Co. v. Sahara Motor Inn, Inc.,* 127 Ariz. 213, 215, 619 P.2d 485, 487 (App.1980) (applying *caveat emptor* to the sale of real property when the defect would have been discovered upon a reasonable inspection and the evidence did not indicate that the purchaser was prevented from inspecting). If the vendor fails to disclose a known latent defect or fails to give appropriate opportunity to discover latent defects, *caveat emptor* does not apply and the vendor must disclose the defect or, at a minimum, be subject to tort liability for nondisclosure.[6]

---

6. Several courts have determined that the failure of a vendor to disclose a known latent defect to a purchaser is evidence of fraud. *See Stemple,* 400 S.E.2d at 566, and cases cited. Whether the failure to disclose a known latent defect amounts to fraud, however, is not before us. Although the issue we are deciding is whether a failure to disclose can be a basis for tort liability for negligent nondisclosure, some earlier fraud cases do assist us in illuminating the existence of the duty to disclose.

There is much authority to the effect that if one party to a contract or transaction has superior knowledge or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exer-

cise of reasonable diligence, or means of knowledge which are not open to both parties alike, *he is under a legal obligation to speak, and his silence constitutes fraud. . . .*
*Williams v. Benson,* 3 Mich.App. 9, 141 N.W.2d 650, 653 (1966) (emphasis added) (quoting 23 Am.Jur.2d *Fraud and Deceit* § 80), *rev'd for a trial on the merits,* 378 Mich. 721 (Mich.1966); *see also Brooks v. Ervin Constr. Co.,* 253 N.C. 214, 116 S.E.2d 454, 457 (1960) ("Where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor is bound to disclose such facts, and make them known to the purchaser."); *Kaze v. Compton,* 283 S.W.2d 204, 207

¶ 16 "We review de novo a trial court's ruling on a motion for [judgment as a matter of law]." *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302, ¶ 6, 995 P.2d 735, 738 (App.1999). "A trial court should grant a motion for [judgment as a matter of law] only when the facts presented in support of a claim have so little probative value that reasonable people could not find for the claimant." *Id.* Moreover, "we must view the evidence most favorably to sustaining the jury's verdict, and must not disturb that verdict 'if reasonable minds could differ as to the inferences to be drawn from the facts.'" *Anderson v. Nissei ASB Mach. Co.*, 197 Ariz. 168, 172, ¶ 10, 3 P.3d 1088, 1092 (App.1999) (quoting *Adroit Supply Co. v. Elec. Mut. Liab. Ins. Co.*, 112 Ariz. 385, 390, 542 P.2d 810, 815 (1975)).

¶ 17 All of the issues raised with regard to the "as is" clauses are questions of fact for the jury. It is for the jury to determine if the defective plumbing was a fact basic to the transaction, *see* Restatement (Second) of Torts § 551 cmt. j, whether a defect is latent or patent, *see Tassan v. United Dev. Co.*, 88 Ill.App.3d 581, 43 Ill.Dec. 769, 410 N.E.2d 902, 910 (1980) ("It would appear that whether a defect is latent or patent is generally a question of fact since it depends on a standard of reasonableness in the given circumstances."), whether the appellants knew about the defective plumbing, *see Favour v. Joseff*, 5 Ariz.App. 244, 246, 425 P.2d 432, 434 (1967) ("The questions of intent and knowledge are questions of a state of mind and the state of mind which must be determined is that of a party. These questions are questions of fact ...."), whether the appellees undertook a reasonable inspection, *see de la Cruz v. State*, 192 Ariz. 122, 124 n. 3, ¶ 8, 961 P.2d 1070, 1072 n. 3 (App.1998) ("[T]he jury's role was ... to determine whether the State breached its duty to act reasonably [when undertaking an inspection] ...."), and whether the appellants did not give the appellees equal opportunity to discover the defect. *See* Restatement (Second) of Torts § 551 cmt. m ("[D]isputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, [or] the other's ignorance of it or his opportunity to ascertain it ... are to be determined by the jury...."). Viewing the evidence in the light most favorable to upholding the jury's verdict, we conclude that reasonable minds could differ on the inferences to be drawn from the evidence. The appellants were not entitled to judgment as a matter of law merely because the purchase contracts contained "as is" clauses.

¶ 18 The dissent makes a good point. It appears, however, that the dissent posits that a contract containing an "as is" clause relieves the seller of the obligation to act in good faith, which is the obligation of every contracting party. The choice we are given is to elevate form over the moral and ethical duties inherent in our day-to-day lives. We choose the latter-that which reaffirms the policies underlying the covenant of good faith and fair dealing.

## II. *The Trial Court's Refusal to Give an Instruction on the "As Is" Clauses*

¶ 19 The appellants next contend that the trial court erred by failing to give the jury an instruction on what the legal effect of an "as is" clause had on the underlying transaction. Although both parties requested an "as is" instruction, the trial court did not give one. The appellants submitted the following instruction: "The 'as is' clause in a contract puts the buyer on notice that the property may be defective, and it precludes the buyer from justifiably relying on the seller's silence as a warranty of fitness." The appellees' proposed instruction stated:

The realty purchase contracts under which plaintiffs purchased the apartment

---

(Ky.1955) ("[A]ctionable fraud or misrepresentation by a vendor may be by concealment or failure to disclose a hidden condition or a material fact.... If deception is accomplished, the form of the deceit is immaterial."); *Rothstein v. Janss Inv. Corp.*, 45 Cal.App.2d 64, 113 P.2d 465, 467 (1941) (holding that a vendee's personal inspection of property is not a defense to fraud when the vendor knew of the defects, "and 'where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such fact to the vendee.'" (quoting Clauser v. Taylor, 44 Cal.App.2d 453, 112 P.2d 661, 662 (1941))).

complexes at issue contain a disclaimer of warranty clause that provides in part: "Buyer is purchasing the property as a result of its own examination thereof in its 'AS IS' condition, and upon the exercise of its own judgment and investigation." Although that clause may be considered as evidence, a party cannot free himself from fraud or misrepresentation with a clause in a contract. Clauses in realty purchase contracts do not preclude actions by buyers for non-disclosure.

¶ 20 "In order to properly preserve an objection to jury instructions on appeal, counsel must state distinctly what is being objected to and the grounds for the objection." *Williams ex rel. Dixon v. Thude,* 180 Ariz. 531, 533, 885 P.2d 1096, 1098 (App.), *review granted in part* (1994), *aff'd,* 188 Ariz. 257, 934 P.2d 1349 (1997); Ariz. R. Civ. P. 51(a) ("No party may assign as error the giving or the failure to give an instruction *unless that party objects thereto* before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection.*" (emphasis added)). "The purpose of this rule is to fully advise the trial court of the basis of a litigant's position so that it may not be led into involuntary error." *Edward Greenband Enters. of Ariz. v. Pepper,* 112 Ariz. 115, 118, 538 P.2d 389, 392 (1975).

¶ 21 We conclude that the appellants failed to preserve this issue for appeal. First, although not dispositive of the issue, the appellants' objection to the appellees' proposed jury instructions was devoid of any objection to the inclusion of the appellees' proposed "as is" instruction. Second, when the parties were settling final jury instructions with the trial court, counsel for the appellants stated that "[t]he objection to the [appellees' 'as is'] instruction is simply if you're going to be giving an instruction like that, we are asking that you also give [the appellants'] proposed jury instruction No. 5, which is an additional sentence that talks about the as is clause." When advised by the trial court that it was "not inclined to give either" instruction because it felt that both proposed instructions were argumentative, counsel for the appellants responded, "That's

another option." The appellants' counsel continued, "Like I said, your Honor, if you're going to give one, we are asking you to give the other. *We can live with neither one of those.*" (Emphasis added.) The trial court then stated, "I'm not going to give either one." That was the end of the discussion. Clearly, the appellants objected to the giving of only the appellees' instruction without the appellants' instruction, but they maintained that they would be satisfied if neither instruction was given. Accordingly, the appellants cannot predicate error upon the trial court's refusal to give any "as is" instruction because they have waived that issue on appeal.

¶ 22 We also note that the trial court, even though refusing to give either instruction, did permit both parties to "say what you want about an as is clause in closing argument." The appellants capitalized on the trial court's permissive gesture and argued as follows:

Since my clients didn't make any representations, they didn't make any false ones.

And that's the significance of all this business about the contracts and this *as is* and all of that. They did an *as is* deal. They said you have the right to inspect. *As is* means, you know, we are letting you decide in your judgment whether you want to buy these places or not.

You got to decide. That's why you get to, you know, kick the tires. We want to sell them, so you decide if you want them. Just like if you bought a car *as is.* It's eight years old. Nobody knows whether the carburetor is going to last a day, a week, a year, so we're selling it *as is.*

That's why we are not making any representations to the [appellees] in this case, because we are selling property *as is.* If we weren't selling them *as is,* we would make some representations, I guess . . . . It's just a business decision that was sold *as is,* bought *as is.* There's nothing wrong with that. It's not like it's against the law.

(Emphasis added.)

## III. *The Trial Court's Imputed Knowledge Instruction*

¶ 23 The appellants contend that the trial court committed reversible error by al-

lowing the jury to consider imputed knowledge of the plumbing defect flowing from the appellants' agents to the appellants, rather than instructing the jury that, under § 551 of the Restatement (Second) of Torts, the appellants were required to have actual knowledge of the defect. This issue has been preserved for appeal.

¶ 24 We first determine whether § 551 of the Restatement (Second) of Torts requires a principal to have actual knowledge as opposed to constructive knowledge imputed to it by an agent. If we conclude that actual knowledge is required, the trial court's instruction on imputed knowledge was reversible error. "A jury verdict will not be overturned because of the jury instructions that were given unless there is substantial doubt as to whether or not the jury was properly guided in its deliberations." *Catchings v. City of Glendale,* 154 Ariz. 420, 424, 743 P.2d 400, 404 (App.1987).

¶ 25 The appellants' argument is not well taken. A review of our common law, the Restatement (Second) of Torts, and the Restatement (Second) of Agency indicates that knowledge imputed from an agent to its principal can satisfy the requirements for nondisclosure under § 551 of the Restatement (Second) of Torts. As a general proposition, "knowledge acquired by an agent in the course of employment is imputed to the principal .... [and] is premised on the presumption that the agent will perform his obligation to give his principal all knowledge relevant to the principal's protection and interest." *Manley v. Ticor Title Ins. Co. of Cal.,* 168 Ariz. 568, 572, 816 P.2d 225, 229 (1991).

¶ 26 The appellants argue that the term "know" within the meaning of § 551 of the Restatement (Second) of Torts somehow requires actual knowledge. The appellants incorrectly premise their argument on the notion that a negligent nondisclosure claim has a "deceit component," and, therefore, that the state of mind of an agent cannot be imputed to the principal. We disagree. *See* Restatement (Second) of Agency § 257 cmt. b (1958) ("A principal, *although personally innocent,* is liable in an action of deceit under the rule stated in this Section [Misrepresentations; in General] if the agent's conduct constitutes deceit." (emphasis added)); *id.* § 261 cmt. a ("The principal is subject to liability [for his agent's fraud] under the rule stated in this Section *although he is entirely innocent ...."); id.* § 272 cmt. c ("In determining tort liability, the knowledge which the actor has or should have is usually of great importance. This is particularly true in cases of negligence and in tort which, *like deceit ...,* are based upon the fact that the defendant ·has acted improperly in view of the knowledge which he has." (emphasis added)); *id.* illus. 6 ("P employs A to manage rental property. A learns that a stairway used in common by a number of tenants is dangerously weak. P's liability for harm to a tenant, hurt by the fall of the stairway, results *from A's knowledge."* (emphasis added)).

¶ 27 The cases that the appellants cite for the proposition that the appellants were required to have actual knowledge of the defective plumbing, rather than constructive knowledge through their agents, do not support their position. In *Frazier v. Southwest Savings & Loan Ass'n,* 134 Ariz. 12, 653 P.2d 362 (App.1982), this Court did not have an imputed knowledge issue, or even an agency issue, before it. Rather, this Court held that the buyer's lender could not be held liable for nondisclosure because the evidence did not support a finding either that the lender was an agent of the seller or that the lender had knowledge of the seller's misrepresentations. *Id.* at 18–19, 653 P.2d at 368–69.

¶ 28 The next two cases that the appellants cite, *Aranki v. RKP Investments, Inc.,* 194 Ariz. 206, 979 P.2d 534 (App.1999), and *National Housing Industries v. E.L. Jones Development Co.,* 118 Ariz. 374, 576 P.2d 1374 (App.1978), are also distinguishable. In both of those cases, the plaintiffs attempted to impute the knowledge of a principal to an agent. *See Aranki,* 194 Ariz. at ˙208–09, ¶¶ 8–10, 979 P.2d at 536–37; *Nat'l Housing Indus.,* 118 Ariz. at 379, 576 P.2d at 1379. By contrast, the facts of this case do not demonstrate that the appellees are attempting to impute knowledge of a principal to an agent.

¶ 29 The appellants last cite *Wyatt v. Wehmueller,* 167 Ariz. 281, 806 P.2d 870 (1991), in support of their position. In *Wyatt,* the supreme court departed from the general common law rule that the knowledge of an agent is imputed to the agent's principal because it determined that the legislature, by statute, had intended to abrogate the common law rule and require that the principal have knowledge-in-fact. *Id.* at 284–85, 806 P.2d at 873–74. The court reasoned that the statute at issue carried with it criminal penalties and the scienter element of a criminal act could not be imputed. *Id.* at 285, 806 P.2d at 874. In addition, the court determined that the available remedies were punitive in nature, and, therefore, outside the scope of the general common law rules. *Id.* at 285–86, 806 P.2d at 874–75. Here, we are not dealing with a statutory abrogation of the common law. Rather, we are evaluating a common law cause of action sounding in tort. *Wyatt* does not support the appellants' position.

¶ 30 The appellants also rely on comment b to § 275 of the Restatement (Second) of Agency, which states in part,

> If knowledge, as distinguished from reason to know, is the important element in a transaction, and the *agent who has the knowledge is not one acting for the principal in the transaction,* the principal is not affected by the fact that the agent has the knowledge.

(Emphasis added.) This comment to § 275 does not support the appellants' position. Rather, the comment merely reaffirms that the knowledge of an agent who does not represent the principal in the underlying transaction cannot be imputed to the principal.

¶ 31 We see no reason to depart from the common law rule of imputed knowledge in the context of a negligent nondisclosure claim given that the law presumes that "the agent will perform his obligation to give his principal all knowledge relevant to the principal's protection and interest." *Manley,* 168 Ariz. at 572, 816 P.2d at 229. We are particularly reluctant to depart from the common law in this case because there was substantial testimony that the property management company, whose agents accompa-

nied the appellees during the inspections of the buildings, was actually in partnership with the appellants concerning the purchase and sale of the buildings. "Each partner is an agent of the partnership for the purpose of its business. An act of a partner ... for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership...." A.R.S. § 29–1021(1) (1998). The trial court did not err by giving the jury an imputed knowledge instruction.

IV. *The Preclusion of Evidence of Payment For Repairs by Settlement Proceeds from the Plumbing Manufacturer*

¶ 32 The appellants next argue that the trial court erred by granting the appellees' motion *in limine* that precluded the appellants from introducing evidence that the appellees had received settlement proceeds from a class action lawsuit involving the manufacturers of the defective plumbing. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Brown v. United States Fid. and Guar. Co.,* 194 Ariz. 85, 88, ¶ 7, 977 P.2d 807, 810 (1998). Here, we find no abuse of discretion.

¶ 33 The appellees argued, and the trial court appears to have agreed, that the collateral source rule precluded the admission of evidence relating to the proceeds of a settlement with the manufacturer of the PB pipe. "In general, the collateral source rule allows a plaintiff to fully recover from a defendant for an injury even when the plaintiff has recovered from a source other than the defendant for the same injury." *Norwest Bank (Minn.), N.A. v. Symington,* 197 Ariz. 181, 189, ¶ 36, 3 P.3d 1101, 1109 (App.2000). This means that "compensation for an injury received from a collateral source *fully independent* of the wrongdoer does not operate to reduce the damages recoverable from the wrongdoer." *Burrington v. Gila County,* 159 Ariz. 320, 325–26, 767 P.2d 43, 48–49 (App.1988) (emphasis added).

¶ 34 Even if we were to assume that the appellees received the settlement funds

based upon the same injury that the appellants are alleged to have caused, it is clear that the manufacturer of the pipe and the appellants are independent of each other and any benefit received from the manufacturers is collateral to the damages allegedly caused by the appellants. We disagree with the appellants that it does not matter "that [the appellees] asserted different claims against [the appellants] in this case." The injury resulting from the actions of the manufacturer by negligently manufacturing the PB pipe and the injury caused by the appellants due to the nondisclosure of a defective condition of the property are only related in that the defective condition was the plumbing—two completely unrelated torts with unrelated measures of damage.

¶ 35 Moreover, even if the appellants are correct in their assertion that the collateral source rule does not apply, the fact that the appellees received settlement funds from a product liability suit is irrelevant to the damages issue asserted in the appellees' cause of action for nondisclosure against the appellants. That is, the evidence of the settlement proceeds for repairs would have been irrelevant because the appellees' measure of damages was the difference between what the appellees paid for the buildings and what the buildings were worth at the time of the sale, including the defective plumbing. Subsequent receipt of monies from a third party and ensuing repairs do not affect that measure of damage. The trial court did not abuse its discretion by precluding that evidence from the trial.

## V. *The Trial Court's Preclusion of the Appellants' Offer to Rescind the Purchase Contracts*

¶ 36 The appellants next argue that the trial court erred by precluding the introduction of the appellants' offer to rescind the purchase contracts, which they assert is relevant to the issue of the appellees' duty to mitigate damages. We disagree. The appellees moved *in limine* to preclude the appellants from introducing the offer to rescind the purchase contracts and the trial court granted the motion. We need look no further than our rules of evidence to determine that the trial court was well within its discretion in precluding the evidence. *See Brown*, 194 Ariz. at 88, ¶ 7, 977 P.2d at 810.

¶ 37 Rule 408 of the Arizona Rules of Evidence precludes the introduction of offers to compromise:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, *is not admissible to prove liability for or invalidity of the claim or its amount.*

Ariz. R. Evid. 408 (emphasis added). The appellants argue that the evidence of the settlement offer is directly related to the appellees' duty to mitigate damages, that is, had the appellees accepted the settlement offer, the appellees would not have incurred the damages that it sought as a product of this lawsuit. The appellants' argument pertains directly to the *amount* of the appellees' claim. *Tribby v. Northwestern Bank of Great Falls*, 217 Mont. 196, 704 P.2d 409, 417 (1985) ("We are not persuaded by the contention that refusing an offer to settle is a failure to mitigate damages and we find no direct authority for that proposition.").

¶ 38 The appellants cite *Burris v. City of Phoenix*, 179 Ariz. 35, 875 P.2d 1340 (App. 1993), for the proposition that under all circumstances, settlement offers may be admitted on a mitigation of damages issue. To that extent, we find that *Burris* is not dispositive on this issue and is distinguishable from the instant case. *Burris* involved the admission of the City of Phoenix's offers to compromise Burris's employment discrimination claim. The trial court concluded that the "settlement discussions were admissible concerning Burris's failure-to-hire claim but not on his wrongful discharge claim." *Id.* at 41, 875 P.2d at 1346. The court of appeals recognized that "[t]he trial court did not consider evidence of the settlement offer on the issue of the validity of Burris's claim; instead, the court considered the offer on the question of mitigation of Burris's damages [on Burris's failure-to-hire claim]." *Id.* The court of appeals then concluded that "Rule 408 does not bar this use of the evidence of

the settlement discussions and offer." *Id.* Without second-guessing the wisdom of the court in *Burris,* the admission of the settlement offers in relation to Burris's *failure-to-hire* claim may have been appropriate. The court in *Burris* did not, however, extend the exceptions to the admissibility of settlement offers precluded by Rule 408. Rather, the admission of the settlement offers at issue in *Burris* is unique to the facts of that case.

¶ 39 Here, that unique quality is not present. Evidence of offers to rescind purchase contracts under a theory of mitigation of tort-based damages is not relevant, even if Rule 408 would allow for the wholesale admission of any evidence tending to support a mitigation of damages defense.

> The failure to mitigate damages might arguably constitute a proper purpose for admitting evidence of settlement negotiations under [Rule] 408, but the issue is irrelevant in this case because the plaintiffs did not have the duty to mitigate their damages by accepting the offer to rescind. As the victims of misrepresentation, the plaintiffs could elect to either affirm the contract and sue for damages or rescind the contract.

*Price v. Long Realty, Inc.,* 199 Mich.App. 461, 502 N.W.2d 337, 340 (1993). We see no abuse of the trial court's discretion by prohibiting the evidence of the appellants' offer to rescind.

### VI. *The Trial Court's Refusal to Give an Avoidable Consequences Instruction*

¶ 40 The appellants also argue that the trial court erred by failing to give an avoidable consequences instruction, that is, an instruction to the jury that a tort plaintiff has the duty to mitigate its damages and "cannot recover for losses due to 'avoidable consequences.'" *Monthofer Invs. Ltd. P'ship v. Allen,* 189 Ariz. 422, 428, 943 P.2d 782, 788 (App.1997). The appellants point to no evidence in the record that an avoidable consequences instruction would have been warranted. *See Herman v. Sedor,* 168 Ariz. 156, 158, 812 P.2d 629, 631 (App.1991) ("It is reversible error to instruct on an issue if there is no evidence to support the instruction."). The appellants merely give an un-

supported proposition that the appellees "could have avoided the consequential damages ... had [the appellees] made the required repairs earlier."

¶ 41 The appellees, however, are seeking the measure of damages between what they paid for the buildings and the buildings' fair market value at the time of the sale. We conclude that the trial court did not abuse its discretion by refusing to give an avoidable consequences instruction. The instruction would not have conformed to the evidence presented at trial.

### VII. *Sufficiency of the Evidence to Support the Award of Consequential Damages*

¶ 42 The appellants' final argument is that the evidence did not support the jury's consequential damages verdict, and on that basis, the appellants are entitled to a new trial. "In reviewing a jury verdict, we view the evidence in the light most favorable to sustaining the verdict. We will affirm the verdict if there is substantial evidence to support it." *Warrington,* 197 Ariz. at 69, ¶ 4, 3 P.3d at 989 (citation omitted).

¶ 43 The trial court's charge to the jury on the issue of damages was as follows:

> If you find that any of the defendants are liable to plaintiffs for negligent misrepresentation by omission or fraud, you must then decide the full amount of money that will reasonably and fairly compensate plaintiffs for damages proved by the evidence to compensate the plaintiffs for the pecuniary loss to them of which the misrepresentation is a legal cause, including the difference between the value of what was received in the transaction and the purchase price or other value given for it, and pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentations.

Because the trial court instructed the jury on both benefit-of-the-bargain damages and consequential damages, and the verdict forms do not distinguish between the two types of damages, we cannot conclude what, if any, portion of the jury's award should be considered consequential damages.

¶ 44 From an evidentiary standpoint, the appellees produced sufficient evidence to establish at least benefit-of-the-bargain damages. The appellees presented testimony that, had they known of the defective plumbing, they would have purchased the buildings for $5 to $6 million less than the $15 million paid. In addition, the appellees presented expert testimony on the replacement value of the defective plumbing, including "lost opportunity" damages for use of the money that the appellees overpaid, which the expert opined to be, at a minimum, nearly $3 million. The jury awarded approximately $700,000 more than the appellees' expert's opinion that, at a minimum, the appellees lost $3 million as a result of the nondisclosure of the defective plumbing. Even if we assume that the jury awarded nearly $700,000 as "consequential damages," we find that the evidence supports this award. The expert testified that, in his opinion, he would expect "the discount [on the purchase price of the properties] to be greater than simply the cost of repairs [to the plumbing], because clearly there is cost associated with that, which would be reflected in the property value." In any event, it was within the jury's province to determine the compensation that appellees were due when taking into account the fair market value of the buildings at the time of the sale, including defects, and the price the appellees paid for the buildings. We conclude that the evidence supports the jury's verdict.

## CONCLUSION

¶ 45 For the foregoing reasons, we affirm the jury's verdict and the judgment entered thereon.

CONCURRING: JON W. THOMPSON, Judge.

EHRLICH, Judge, Dissenting.

¶ 46 I dissent from the analysis employed by the majority. This case presents a paradigm for the application of contract principles to a straightforward commercial real-estate contract between equally informed and sophisticated parties represented by legal counsel.

¶ 47 When the appellees bought the two apartment complexes from the appellants, both purchase contracts contained a substantially similar provision, which stated:

> *Disclaimer of Warranties. Buyer acknowledges that except as expressly set forth in the Agreement, Seller makes and has made no representations or warranties of any kind whatsoever, including but not limited to warranties concerning the* condition of title, *physical condition,* encroachments, access, zoning, value, future value, income potential, any survey, environmental report or other information prepared by third parties, loan assumability, or the presence on or absence from the Property of any hazardous materials or underground storage tanks. *Buyer is purchasing the Property as a result of its own examination thereof in its "AS IS" condition, and upon the exercise of its own judgment and investigation.*

(Emphasis added.) Both contracts also contained the following provision for the appellees to inspect the property:

> *Buyer's Inspection.* During the Review Period described ... below, *Buyer and Buyer's agents, servants, employees and independent contractors shall have reasonable access to the Property for the purpose of investigating the condition of the same,* and for any other reasonable purpose which relates to the potential use, occupancy, operation and maintenance of the Property; provided, however, that in conducting any such investigations ... (ii) Buyer shall not injure or damage the Property, and shall indemnify and hold Seller harmless for, from and against any and all liability, loss, cost, damage, or expense ... which may arise out of such entry and Buyer's activity upon the Property.... *[I]n the event that this Escrow does not close, Buyer shall restore the Property to the same condition which existed at opening of Escrow ....*

(Emphasis added.)

¶ 48 Prior to the close of the transactions, the appellees inspected the property in accord with the contract. Those inspections did not reveal any substantial problem with the buildings' plumbing. It was not until

approximately two years after closing that the appellees learned that the plumbing in both Presidio North and Bell Tower consisted of polybutylene ("PB") pipe.

¶ 49 When the appellees sued the appellants alleging fraud and non-disclosure for having failed to disclose the defective plumbing prior to the close of the transactions, the appellants candidly responded that, because they were unaware that the buildings had been constructed using PB pipe when they sold the property to the appellees, they could not disclose the unknown condition. The appellees in turn acknowledged that their inspections of the buildings had not revealed the presence of PB pipe.

¶ 50 The parties do not dispute that the appellees' claim for non-disclosure is predicated on Restatement (Second) of Torts section ("Section") 551 (1977), and the appellants do not claim that the "as is" clause in the purchase contracts relieves them of tort liability for non-disclosure as a matter of law. Rather, the appellants argue that the "as is" clause pertains to but one element of the tort of non-disclosure—the element of duty—relieving them of liability as follows: Even had they known of the defective plumbing—which they did not, the appellants were under no duty to disclose the PB pipe to the appellees by operation of the "as is" clause; the "as is" clause did not act as a waiver of the appellants' tort liability but, instead, concerned the assignment of duty and risk; the burden of discovering the defect thereby shifted to the appellees; the appellants did not withhold from the appellees the opportunity to discover the defective plumbing; the appellants accordingly are not liable for the appellees' failure to discover the PB pipe, and the appellants should have been granted judgment as a matter of law.

¶ 51 Comment j to Section 551 describes a fact basic to a transaction as

a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence.

These facts may be material, but they are not basic.

Section 551 sets forth a plaintiff's burden when claiming that a defendant negligently failed to disclose facts basic to the transaction:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, *if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.*

(Emphasis added.) According to Section 551(2)(e):

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

\* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of the facts.

¶ 52 Thus, Section 551(2)(e) imposes a duty of disclosure on a commercial seller only if certain conditions are met. Specifically, the seller must (1) know the basic fact that is not disclosed; (2) know that failure to disclose the basic fact may induce the potential buyer to enter the transaction; (3) know that the buyer is under a mistake as to the basic fact and (4) know that the buyer reasonably expects disclosure of the basic fact. Whether a buyer may reasonably expect disclosure of a basic fact depends on the contract—the relationship between the parties, the customs of the trade or other objective circumstances. Again according to comment j of Section 551, "if the parties expressly or impliedly place the risk as to the existence of a fact on one party ... the other party has no duty of disclosure."

¶ 53 By expressly providing that the property was being sold "as is," the purchase contracts between the appellants and the appellees placed the risk as to the existence of defects on the appellees. *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 215, 619 P.2d 485, 487 (App.1980); *see Haney v. Castle Meadows, Inc.*, 839 F.Supp. 753, 757 (D.Colo.1993); *Richey v. Patrick*, 904 P.2d 798, 804 (Wyo.1995); *Arbor Village Condominium Ass'n v. Arbor Village Ltd.*, 95 Ohio App.3d 499, 642 N.E.2d 1124, 1132 (1994); *Omernik v. Bushman*, 151 Wis.2d 299, 444 N.W.2d 409, 411 (App.1989). Consequently, absent fraud or misrepresentation, a contractual agreement to accept real property "as is" with the right to inspect defeats liability pursuant to Section 551 because it relieves the seller of the duty to disclose that the property was sold in defective condition. *Richey*, 904 P.2d at 804; *Kaye v. Buehrle*, 8 Ohio App.3d 381, 457 N.E.2d 373, 376 (1983).

¶ 54 The presence of an "as is" clause in a contract for the sale of real property substantially increases the buyer's duty to exercise diligence in discovering defects in the property prior to purchase. This is especially true in contracts for sale of commercial property because in cases involving the sale of such property it is presumed that the business persons involved know the meaning of the "as is" phrase and protect themselves accordingly. To sophisticated parties represented by counsel as were these, an "as is" clause serves not only as a warning to the buyer but a disclaimer of a representation of condition or quality.

¶ 55 The appellees rely upon *Salt River Project Agricultural Improvement & Power District v. Westinghouse Electric Corporation*, 143 Ariz. 368, 694 P.2d 198 (1984), and *Aranki v. RKP Investments, Inc.*, 194 Ariz. 206, 979 P.2d 534 (App.1999), in which this court cited *SRP* in its holding, and argue that the existence of an "as is" provision in a purchase contract cannot operate as a waiver of tort claims. The holdings of these cases are insufficient to support the appellees' position.

¶ 56 The court in *SRP* specifically considered whether a general Uniform Commercial Code warranty disclaimer could necessarily act as a waiver of claims for strict product liability pursuant to Section 402A. It did not address the issue of negligent non-disclosure under Section 551, the duty of disclosure imposed by Section 551(2)(e) or the effect of an "as is" clause on that duty. Additionally, the actual holding of the court in *SRP*, which holding was reiterated in *Aranki*, stated that an agreement will not be enforced to constitute a waiver of tort liability when it is the product of coercion or inadvertence, when the agreement consists of a mere exchange of preprinted forms, when no evidence exists that an agreement was actually bargained for and when the evidence suggests unequal bargaining strength. *Salt River Project*, 143 Ariz. at 385, 694 P.2d at 215; *Aranki*, 194 Ariz. at 209, 979 P.2d at 537. However, the court in *SRP* stated that a waiver *will* be given effect

> where commercial parties have equal bargaining positions so that the choice was freely and fairly made and not forced by the circumstances. Further, the parties must have negotiated the specifications of the product and have knowingly bargained for the waiver. Under these circumstances our courts will enforce the bargain, even if it turns out to have been a bad bargain for one party or the other.

143 Ariz. at 385, 694 P.2d at 215 (emphasis added).

¶ 57 The question is whether the foregoing quotation describes the relationship and therefore the duty between the appellants and the appellees. The answer first requires a determination whether, in fact, a contractual agreement between two parties with equal bargaining positions was freely and fairly made and whether the parties actually negotiated the specifications of the contracts and knowingly bargained for the agreements which contained the "as is" clauses.

¶ 58 The appellees have been registered real-estate agents since 1984. By the time the appellants approached them about purchasing the property, the appellees had earned several million dollars from real-estate dealings. In addition to their own knowledge and experience in the commercial real estate business, in this particular matter, the appellees had retained experts to assist

them in the purchase of the property, including legal counsel. Indeed, paragraph 28.13 of the contracts to which both parties agreed states:

> *Interpretations and Definitions.* The parties agree that each party and his counsel have reviewed and revised this Agreement and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

Furthermore, neither party knew for two years that the plumbing was inherently defective.

¶ 59 The purchase contracts between two parties in equal bargaining positions were freely and fairly made. Both parties, with the aid of legal counsel, negotiated the specifications of commercial contracts and knowingly bargained for agreements that contained the "as is" clauses. When the agreements expressly placed the risk as to the existence of defects on the appellees, they should be expected to have been aware of the meaning of an "as is" sale and to have taken precautions to examine the property thoroughly before buying it.

¶ 60 On this latter point, the appellees argue that the appellants prevented them from inspecting the buildings such as to find the defective condition. This argument is unsatisfactory. The purchase agreements expressly provided that the appellees could investigate the condition of the property as well as its "potential use, occupancy, operation, and maintenance." While the agreements barred irreparable damage to the property, investigation and inspection unlimited as to the plumbing system were permitted with only the proviso that, as was necessary, if escrow did not close, the property was to be restored "to the same condition which existed at [the] opening of escrow."

¶ 61 The issue of duty usually is one for the court to decide as a matter of law, *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985); *Diggs v. Arizona Cardiologists, Ltd.*, 198 Ariz. 198, 200 ¶ 11, 8 P.3d 386, 388 (App.2001), as is a trial court's decision on a motion for judgment. *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302 ¶ 6, 995 P.2d 735, 738 (App.

1999). When issues can be decided as a matter of law, this court has the authority to vacate the judgment in favor of one party and enter judgment in favor of the appropriate party. *Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 628, 886 P.2d 1381, 1384 (App.1994). The judgment in favor of the appellees should be vacated and judgment in favor of the appellants should be entered.